[Civ. No. 2475. Fifth Dist. Apr. 21, 1975.]

UNITED FARM WORKERS OF AMERICA, AFL-CIO, Petitioner, v. THE SUPERIOR COURT OF KERN COUNTY, Respondent; PANDOL BROTHERS, INC., et al., Real Parties in Interest.

## COUNSEL

Cohen, Carder & Engelhardt, Barbara Rhine, Peter Haberfelde, Deborah A. Vollmer and Steven D. Burton for Petitioner.

No appearance for Respondent.

Doty, Quinlan, Kershaw & Fanucchi, William A. Quinlan, Borton, Petrini, Conron, Wetteroth, Hitchcock, Werdel & Kuhs, Borton, Petrini & Conron, George F. Martin, Helon, Manfredo & Chielpegian and Marvin E. Helon for Real Parties in Interest.

## OPINION

**THOMPSON, J.**[*]—Petitioner objects to certain orders of the Superior Court in and for the County of Kern sustaining without leave to amend demurrers to certain alleged causes of action which will be more fully described hereinafter, and sustaining certain special demurrers for uncertainty. Petitioner chose not to amend. The court also sustained a motion to strike interrogatories sought by plaintiff of one defendant and likewise sustained motions to extend the time to answer interrogatories as to other defendants. The court found it unnecessary to rule upon the motions to strike.

---

[*]Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.

Petitioner seeks from this court a peremptory writ of mandate challenging each of these rulings. Although petitioner had a remedy by appeal if it had further sought a judgment of dismissal, under the authority of *Babb* v. *Superior Court* (1971) 3 Cal.3d 841 [92 Cal.Rptr. 179, 479 P.2d 379], we have elected to review the matters thus presented because of the prolixity of similar suits now pending and because of the public policies involved.

The petitioner herein brought suit against the real parties in interest, namely, Pandol Brothers, Inc., a corporation, Pandol & Sons, a partnership, Jack, Matt and Steve Pandol, co-partners doing business as Pandol & Sons; Tex-Cal Land, Inc., a California corporation, all hereinafter referred to as respondents.

The complaint, framed in eight causes of action which will be described with more particularity, alleged generally the wrongful use of petitioner's tradename and trademark, a black eagle emblem, and sought injunctive relief and damages, both compensatory and punitive. Though it is not in the record before us it is apparent that a temporary restraining order was stipulated to restraining respondents from using petitioner's emblem.

We briefly summarize the eight causes of action pleaded;

(a) The first cause of action seeks injunctive relief based upon alleged violations of Business and Professions Code section 14320 et seq., which provide injunctive relief for the owner of a trademark registered with the Secretary of State;

(b) The second cause of action seeks injunctive relief for alleged unfair competition within the meaning of Civil Code section 3369 by reason of the alleged violation of Business and Professions Code sections 17500 and 17535.

(c) The third cause of action seeks civil damages for alleged violation of Labor Code sections 1011 and 1012;

(d) The fourth cause of action is an extension of the first cause of action in that it seeks general damages as well as injunctive relief.

(e) The fifth cause of action incorporates the first and fourth causes of action and additionally seeks recovery of any profits realized by real parties in interest as well as general damages and injunctive relief;

(f) The sixth cause of action alleges damages for violation of civil rights. (Petitioner does not urge any error with respect to the court's rulings upon the sixth cause of action and no appeal is taken with regard to it).

(g) The seventh cause of action seeks damages for alleged unfair competition pursuant to Civil Code section 3369 and false advertising in violation of the Business and Professions Code section 17535;

(h) The eighth cause of action seeks damages for alleged unlawful use of petitioner's insignia in violation of Corporations Code sections 21308 and 21309.

The court sustained general demurrers to the third, sixth and seventh causes of action without leave to amend. It also sustained special demurrers for uncertainty to the sixth and seventh paragraphs of the first cause of action, paragraphs which were incorporated by reference in each of the causes of action, and sustained special demurrers for uncertainty as to the fourth, fifth and eighth causes of action with regard to the allegations of damages. The motions to strike made simultaneously with the demurrers were not ruled upon apparently for mootness in view of the court's rulings upon the demurrers.

The court also granted the motion of respondent Tex-Cal Land, Inc. to strike the interrogatories posed by petitioner, granted the motion of the remaining respondents to extend time for the answering of interrogatories and indicated that upon motion it would also strike them.

Petitioner before us in this proceeding challenges each of the foregoing rulings of the court as an abuse of discretion. We shall discuss these claimed errors in the categories in which they seem to fall.

In the third cause of action, petitioner attempted to state a cause of action for a breach by respondents of sections 1011 and 1012 of the Labor Code which provide:

"§ 1011.   Labor misrepresentation on label; misdemeanor; penalty

"A person engaged in the production, manufacture, or sale of any article of merchandise in this State, shall not, by any label placed or impressed upon such article, or upon its container, misrepresent or

falsely state any of the following as to the production of such article:

"(a) The kind, character, or nature of the labor employed.

"(b) The extent of the labor employed.

"(c) The number of kind of persons exclusively employed.

"(d) That a particular of distinctive class or character of laborers was wholly and exclusively employed, when in fact another class, or character, or distinction of laborers was used or employed either jointly or in any wise supplementary to such exclusive class, character, or distinction of laborers.

"Violation of any provision of this section is a misdemeanor punishable by a fine of not less than one hundred dollars ($100) nor more than five hundred dollars ($500), or by imprisonment for not less than 20 nor more than 90 days, or both."

"§ 1012. False representation of manufacture or sale by union employees; misdemeanor; penalty

"Any person engaged in the production, manufacture, or sale of any article of merchandise in this State, or any person engaged in the performance of any acts or services of a private, public, or quasi-public nature for profit, who wilfully misrepresents or falsely states that members of trades unions, labor associations, or labor organizations were engaged or employed in the manufacture, production, or sale of such article or in the performance of such acts or services, is guilty of a misdemeanor punishable by a fine of not more than five hundred dollars ($500), or by imprisonment in the county jail for not more than 90 days, or both." We note first of all that this case is one of first impression as it relates to a possible civil liability for violation of these statutes.

Initially, we observe that liability for willful breach of a penal statute can no longer be neatly channelled into the time honored correlation of negligence and duty of care. The complexities of modern business and commercial interaction has prompted the enactment of laws such as the ones here under discussion which have no direct relation to negligence or

duty of care as those terms were understood at common law. To illustrate, the case of *Vesely* v. *Sager* (1971) 5 Cal.3d 153 [95 Cal.Rptr. 623, 486 P.2d 151], a case in which a liability was found as against a purveyor of alcoholic beverages in favor of a plaintiff who was injured by the acts of the purveyor in furnishing alcohol to an inebriated person (in violation of the law), finds our state Supreme Court declaring an extension of liability to cases in which a statute, although not providing for civil liability, nevertheless requires the interpretation that a civil liability is created in favor of a person injured as a result of such violation. The court at page 164 states: "A duty of care, and the attendant standard of conduct required of a reasonable man, may of course be found in a legislative enactment which does not provide for civil liability. (See *Richards* v. *Stanley* (1954) 43 Cal.2d 60, 63 [271 P.2d 23]; *Routh* v. *Quinn* (1942) 20 Cal.2d 488, 492 [127 P.2d 1, 149 A.L.R. 215]; 2 Witkin, Summary of Cal. Law (1960) Torts, § 234.) In this state a presumption of negligence arises from the violation of a statute which was enacted to protect a class of persons of which the plaintiff is a member against the type of harm which the plaintiff suffered as a result of the violation of the statute. (*Alarid* v. *Vanier* (1958) 50 Cal.2d 617 [327 P.2d 897]; *Satterlee* v. *Orange Glen School Dist.* (1947) 29 Cal.2d 581 [177 P.2d 279].) The Legislature has recently codified this presumption with the adoption of Evidence Code section 669: 'The failure of a person to exercise due care is presumed if: (1) He violated a statute, ordinance, or regulation of a public entity; (2) The violation proximately caused death or injury to person or property; (3) The death or injury resulted from an occurrence of the nature which the statute, ordinance, or regulation was designed to prevent; and (4) The person suffering the death or the injury to his person or property was one of the class of persons for whose protection the statute, ordinance, or regulation was adopted.' (Subd. (a).)"

Section 286 of the Restatement Second Torts, analyzes legislative enactments such as we have here, stating:

"The court may adopt as a standard of conduct of a reasonable man . . . an administrative regulation whose purpose is found to be exclusively or in part

"(a) to protect a class of persons which includes the one whose interest is invaded, and

"(b) To protect the particular interest which is invaded, and

"(c) to protect that interest against the kind of harm which has resulted, and

"(d) to protect that interest against the particular hazard from which the harm results."

The Restatement Second Torts, section 288 then proceeds to limit the application of the foregoing principles as follows:

"The court will not adopt as the standard of conduct of a reasonable man the requirements of a legislative enactment. . . whose purpose is found to be exclusively

"(a) to protect the interests of the state or any subdivision of it as such, or

"(b) to secure to individuals the enjoyment of rights or privileges to which they are entitled only as members of the public, or

"(c) to impose upon the actor the performance of a service which the state or any subdivision of it undertakes to give the public, or

"(d) to protect a class of persons other than the one whose interests are invaded, or

"(e) to protect another interest than the one invaded, or

"(f) to protect against other harm than that which has resulted, or

"(g) to protect against any other hazards than that from which the harm has resulted."

We think the criteria set forth in section 286 of Restatement Second Torts, as quoted above and as decided in *Vesely* v. *Sager, supra,* clearly demonstrates that a cause of action as pled in the third and seventh causes of action of petitioners' complaint is stated. (See also, *Brockett* v. *Kitchen Boyd Motor Co.,* 24 Cal.App.3d 87 [100 Cal.Rptr. 752].) It would be difficult to imagine a more demonstrable injury than that which might be incurred by a union whose label or other identification has been wrongfully usurped. The union members have paid dues to enable them to finance bargaining procedures, to engage in the recruitment of additional union members and for a multitude of other purposes

beneficial to the union. If their hard won recognition by the public, for example, can be stripped from them by a wrongful taking of their union label, it is small comfort that their protagonists may have been subjected to minor criminal penalties as provided in Labor Code sections 1011 and 1012.

It may be noteworthy that Labor Code sections 1011 and 1012 do not by their terms provide for the use of the injunctive process by the Attorney General to enjoin the acts described in the aforesaid code sections, some indication that self-help by the affected individuals or organization was contemplated by the Legislature.

The case of *Chavez* v. *Sargent* (1959) 52 Cal.2d 162 [339 P.2d 801] cited by respondent real parties in interest does not appear to be any authority for the proposition that the enforcement of labor statutes is solely for the public benefit. In *Chavez* v. *Sargent, supra,* the plaintiff was an employer seeking to enforce a county open shop ordinance and while the discussion of labor's role is quite extensive it does not discuss the problem with which we are here confronted.

While it is true that the damages suffered by the labor organization whose rights have been infringed upon by such practices as are alleged here may be difficult to measure, that very real damage may be incurred both to the union and its members is readily apparent. In the fierce competition of the market place, if a union label, for example, may be usurped trade may well be diverted away from the producer of goods who has an agreement with a particular union to employ only its members with possible loss of employment by union members. Another example which comes to mind is that goods falsely bearing a union label may be shoddily made, thus bringing discredit to the union and possible financial loss to its commercial standing and its financial position.

It is arguable also that a wrongful appropriator of a union label may profit by such wrongful use in that such use may increase the sale of the product bearing a union label, which label may have an appeal and induce the purchase of the goods so labelled.

The fact that Labor Code sections 1011 and 1012 do not provide for the bringing of actions for damages for their violations is not determinative of the issue whether aggrieved individuals might bring such actions. In the case of *Wetherton* v. *Growers Farm Labor Assn.* (1969) 275 Cal.App.2d 168 [79 Cal.Rptr. 543], the court held that a cause of action

for damages could be stated for a violation of Labor Code sections 922 and 923 (relating to the so-called "yellow dog" contracts), stating at page 174: "Violation of a statute embodying a public policy is generally actionable even though no specific remedy is provided in the statute; any injured member of the public for whose benefit the statute was enacted may bring an action." (Citation omitted.)

Also as we said in *Montalvo* v. *Zamora* (1970) 7 Cal.App.3d 69 at page 76 [86 Cal.Rptr. 401], a case also involving an alleged violation of Labor Code section 923: "As established by the authorities cited in our consideration of plaintiffs' first cause of action, *supra*, violations of public policy statutes, including those dealing with certain aspects of employer-employee relations, have been declared justiciable in civil actions. This is true notwithstanding that criminal sanctions are provided. (Witkin, Summary of Cal. Law (1969 Supp.), Agency and Employment, § 94A, pp. 180-181; see also *Petermann* v. *International Brotherhood of Teamsters, supra,* 174 Cal.App.2d 184, 189; *Kouff* v. *Bethlehem-Alameda Shipyard, supra,* 90 Cal.App.2d 322.)"

Similarly in the case of *River Garden Farms, Inc.* v. *Superior Court* (1972) 26 Cal.App.3d 986 at page 1001 [103 Cal.Rptr. 498], citing Civil Code section 3523, "For every wrong there is a remedy" the court stated: "The violation of a statute supplies to any person within the statute's protection a right of action to recover damages caused by the violation."

Undeniably the public in general has an interest in being assured as to the truthfulness of any labelling or the manner in which any product is produced and sold to the public. But that public interest is far less direct than the pecuniary interest of the labor organization involved in any mislabelling or other proscribed practices.

In this case, petitioner has pleaded that it suffered a wrong as a result of the alleged breach by defendants of a duty created by sections 1011 and 1012 of the Labor Code and that the only recompense for those injuries lies in damages. Certainly the precedents cited above support petitioner's position and so we conclude.

The trial court sustained respondents' general demurrer to petitioner's seventh cause of action. Said cause of action was based upon allegations of violations by respondents of Civil Code section 3369 and sections 17500 and 17535 of the Business and Professions Code, said latter sections defining the unfair business practices prohibited by Civil

Code section 3369.[1] The unfair business practice charged is the unauthorized use by respondents of the petitioner's insignia, the black eagle.

Virtually everything we have said about the third cause of action applies with equal force to the seventh cause of action. As we have noted, the breach of a duty imposed by statute gives rise to a cause of action for damages if damages can be shown. The fact that the statutes sound in equity and by their terms do not specify that damages may be awarded does not bar the recovery of damages in a proper case even though the action be one in equity rather than law. This is made clear in *People* v. *Superior Court (Jayhill Corp.)* (1973) 9 Cal.3d 283 [107 Cal.Rptr. 192, 507 P.2d 1400], a case brought by the Attorney General against sellers of encyclopedias for their false sales representations.

In discussing the powers of the court under Business and Professions Code section 17535, the Supreme Court stated: "In the absence of such a restriction a court of equity may exercise the full range of its inherent

---

[1]Section 3369 of the Civil Code provides:

"1. Neither specific nor preventive relief can be granted to enforce a penalty or forfeiture in any case, nor to enforce a penal law, except in a case of nuisance or unfair competition.

"2. Any person performing or proposing to perform an act of unfair competition within this State may be enjoined in any court of competent jurisdiction.

"3. As used in this section, unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising and any act denounced by Business and Professions Code sections 17500 and 17535, inclusive.

"4. As used in this section, the term person shall mean and include natural persons, corporations, firms, partnerships, joint stock companies, associations and other organizations of persons.

"5. Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney in this State in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

Business and Professions Code section 17535 provides:

"Any person, corporation, firm, partnership, joint stock company, or any other association or organization which violates or proposes to violate this chapter may be enjoined by any court of competent jurisdiction. The court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person, corporation, firm, partnership, joint stock company, or any other association or organization of any practices which violate this chapter, or which may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of any practice in this chapter declared to be unlawful.

"Actions for injunction under this section may be prosecuted by the Attorney General or any district attorney, county counsel, city attorney, or city prosecutor in this state in the name of the people of the State of California upon their own complaint or upon the complaint of any board, officer, person, corporation or association or by any person acting for the interests of itself, its members or the general public."

powers in order to accomplish complete justice between the parties, restoring if necessary the *status quo ante* as nearly as may be achieved." (P. 286.) By implication the court in *People* v. *Superior Court, supra,* suggested that even exemplary damages in a particular case might be proper (where an individual was directly injured). It could not be argued with any sincerity that a court which may give exemplary damages may not give general damages. Indeed, it is hornbook law that exemplary damages may not be awarded in the absence of an award of general damages.

Nor do we find any impairment to the bringing of the action herein by the individual petitioner rather than the state. There is an undeniable escalation of self-help litigation, usually in the form of a class action suit but not necessarily so. *Vasquez* v. *Superior Court* (1971) 4 Cal.3d 800 [94 Cal.Rptr. 796, 484 P.2d 964, 53 A.L.R.3d 513]; *People* ex. rel. *Mosk* v. *National Research Co. of Cal.* (1962) 201 Cal.App.2d 765 [20 Cal.Rptr. 516]; *Mills* v. *Electric Auto-Lite* (1970) 396 U.S. 375 [24 L.Ed.2d 593, 90 S.Ct. 616].

We hold that the seventh cause of action is not properly subject to a general demurrer.

■  Respondents' special demurrers to paragraph six of the first cause of action and, pleaded by reference in the remaining causes of action, was sustained on the ground of uncertainty. The particular uncertainty complained of is that the language "at all times mentioned herein defendants packed, shipped . . . containers bearing the name of the organization and trade name and mark of plaintiff, to wit: the words, 'Farmworkers AFL-CIO' and the black eagle emblem of plaintiff." Respondents assert that by reason of the uncertainty of the words "at all times mentioned", and uncertainty is conceded by petitioner, they are not sufficiently informed to enable them to answer, to prepare their case to answer interrogatories, etc. There is a certain plausibility to respondents' argument and we might facetiously observe that the phrase "at all times mentioned" would include the adoption of the United States Constitution which is mentioned as one of the times. However, in the light of modern day discovery rules no essential harm is shown to respondents so as to warrant the sustaining of a special demurrer for uncertainty, a ruling which in effect resulted in the striking of all causes of action since paragraph six is incorporated in all the counts of the complaint. The case of *People* v. *Superior Court, supra,* in a closely analogous case held that such uncertainty was not fatal, stating, "In our

view, these evidentiary facts need not be pleaded, and the acts . . . are alleged in sufficient detail to apprise defendants of the basis of the cause of action. If defendants require further specifics in order to prepare their defense, such matters may be the subject of discovery proceedings." (9 Cal.3d at p. 288.)

A like demurrer for uncertainty is interposed to paragraph 7 of the first cause of action in that it alleges in part: "Plaintiff's organization and trade name and mark are registered pursuant to and in conformance with the law of the State of California." We are puzzled that plaintiff indulges in this type of obfuscation and does not allege the date of registration. It appears to us to be a form of "gamesmanship" as it is obviously analogous almost to a negative pregnant in that it implies that the registration did not take place until some time after the acts complained of in other paragraphs. However, if this failure to register, and we do not so hold, is so significant as to expose plaintiff's complaint to a motion for summary judgment, by affidavit respondents could readily produce the date and make their motion for summary judgment. What we have said in the previous paragraph as to the sixth paragraph applies equally to the seventh and we do not hold this uncertainty to be fatal.

The respondents demurred to the fourth and fifth causes of action upon basically the same ground as to both that damages were improperly pleaded. The fourth and fifth causes of action relate to violation of section 14320 of the Business and Professions Code. Subdivision (a) of section 14320 provides for a civil action for the unauthorized use of a registered trademark and subdivision (b) provides for a civil action for the unauthorized reproduction of a registered trademark. Damages in the amount of $2,000,000 are sought in the fourth cause of action and a like sum plus all profits derived from the unlawful use of the trademark are asked for in the fifth cause of action.

We have found no cases supportive of respondents' theory that damages are improperly pled nor does logic assist us. ■ General damages may well flow from a breach of a duty and there is no compulsion in pleading that the specific items of damages be set forth. (3 Witkin, Cal. Procedure, § 784 at p. 2399.)

Respondent's demurrer to the eighth cause of action, sustained likewise on the ground of uncertainty, falls in the same category as the fourth and fifth causes of action. The eighth cause of action is predicated

upon Corporations Code sections 21308 and 21309, wrongful use of an insignia. Section 21309 provides: "In any action under section 21308 it is not necessary to allege or prove actual damages or the threat thereof, or actual injury or the threat thereof to the plaintiff, but in addition to injunctive relief any plaintiff in any such action is entitled to recover the amount of the actual damages, if any, sustained by such plaintiff."

Again we hold that the prayer for general damages is not subject to the charge of being uncertain. In fact the code section above quoted specifically makes unnecessary the pleading of any damages.

Respondents' allegation that the word "insignia" is uncertain is hardly worthy of discussion. The black eagle emblem repeatedly referred to in the complaint most assuredly is an "insignia."

The trial court struck the interrogatories propounded to respondent, extended time for the other respondents to answer similar interrogatories and advised these respondents that he would "gladly" entertain motions to strike them.

We think that the trial judge abused his discretion in striking the interrogatories in toto. In saying this we are not commending petitioner for the compiling of voluminous interrogatories, many of which appear to have no relevancy and appear intended only to harass. For example, apparently under the guise of discovering the wealth of a corporate defendant for the purpose of seeking punitive damages, questions are asked as to the wealth of stockholders in the corporation without a suggestion in the pleadings that the corporation was the *alter ego* of the stockholders or the corporate officers or even a pleading which would sustain punitive damages since the abandonment of the sixth cause of action.

Nevertheless, the striking of the entire set of interrogatories was an abuse of discretion. We realize that in probably no area of the law have well intended litigation aids been so severely abused as in the area of discovery. Yet the court is not without power to curb such abuse. The court may require financial reimbursement for unduly burdensome and frivolous interrogatories or impose sanctions for abuses. But the court may not strike an entire interrogatory as was here done. (*Greyhound* v. *Superior Court* (1961) 56 Cal.2d 355 [15 Cal.Rptr. 90, 364 P.2d 266].) And the court must be ever mindful that the burden is upon the interrogatee to demonstrate the inapplicability of a particular

interrogatory. ▮ In fact no showing of any real substance as to oppression was shown in this case by the interrogatees.

If interrogatories such as these here under consideration appear to the trial court to be unduly oppressive or even frivolous we believe that counsel proposing the interrogatories are entitled to some guidance from the trial court as to the areas of interrogation which are appropriate.

Respondents are also free to seek protective orders which are tailored to the particular problem. This was not here done.

▮ As to the order extending time to answer interrogatories of the remaining defendants we find that it was issued without any exercise of discretion on the part of the court, the court indicating that he would strike them entirely if requested. Upon a proper showing we might find that the extension requested was reasonable but such is not the case here.

We feel it necessary to discuss the motions to strike inasmuch as they are given life by our reversal of the trial court's ruling upon demurrers. We observe that the pleadings contain a good deal of pejorative "window dressing" and other irrelevant material but since the motions were not passed upon by the trial court we make no rulings with respect thereto.

The peremptory writ is granted in accordance with the opinion herein. The trial court is directed to overrule the demurrers and each of them and to rule upon the motions to strike not previously ruled upon and to otherwise proceed in accordance with this opinion.

Gargano, Acting P. J., and Franson, J., concurring.

The petitions of the real parties in interest for a hearing by the Supreme Court were denied June 19, 1975.