**KELLEY BLUE BOOK, Plaintiff,**

v.

**CAR-SMARTS, INC., Daniel T. Cwieka, and Jay Barchenger, Defendants.**

**No. SA CV 90–712–LTL (RWRx).**

United States District Court,
C.D. California.

Aug. 27, 1992.

**4.** Plaintiffs' motion for class certification is premature and hence DENIED WITHOUT PREJU- DICE.

Edouard V. Rosa, Law Offices of Hueb-ner & Rosa, Los Angeles, Cal., for plaintiff.

William E. Levin, Hawes & Fischer, Newport Beach, Cal., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

LYDICK, District Judge.

This action came on regularly for trial before the Court sitting without a jury on August 3, 1992. Having heard the testimo-ny of the witnesses called, reviewed and examined the other evidence presented by the parties and heard the arguments of counsel, the Court now makes its findings of fact and conclusions of law:

## FINDINGS OF FACT

### I

This action brought by plaintiff Kelley Blue Book ("plaintiff") against defendants Car–Smarts, Inc., Daniel T. Cwieka, and Jay Barchenger (collectively "defendants") arises under the Lanham Trade–Mark Act, 15 U.S.C. § 1051 *et seq.* (plaintiff's federal trademark infringement and false designa-tion of origin causes of action); the Califor-nia Business and Professions Code § 17200 *et seq.* (plaintiff's unfair trade practices cause of action); the California Business and Professions Code § 14330 (plaintiff's dilution cause of action); and the common law (plaintiff's common law unfair competi-tion and common law trademark infringe-ment causes of action).

### II

Plaintiff is a general partnership orga-nized under the laws of California with its principal place of business in Irvine, Cali-fornia. Defendant Car–Smarts, Inc. ("Car–Smarts") is a California corporation with its principal place of business in Laguna Niguel, California. Defendant Daniel T. Cwieka ("Cwieka") is the president and co-owner of Car–Smarts. Defendant Jay Bar-chenger ("Barchenger") is a former officer and co-owner of Car–Smarts.

### III

Plaintiff is a publisher of publications for the automobile industry which list values for new and used vehicles covering new cars, R.V.'s, motorcycles, and manufac-tured housing. The publications are sold under the "KELLEY BLUE BOOK & DE-SIGN" trademark. Plaintiff also offers to its customers computerized electronic ver-sions of its publications which can be ob-tained through a computer networking ser-vice or in the form of floppy disks. These products are also provided under the

"KELLEY BLUE BOOK & DESIGN" trademark. In addition, plaintiff provides administrative services to automobile dealers who sell contracts to their customers, and plaintiff sells this service also under the "KELLEY BLUE BOOK & DESIGN" service mark.

## IV

Defendants operate an automobile pricing information service under the "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" service mark and telephone designation. Defendants first began offering this service under the "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations in 1990 and 1992 respectively.

## V

Both defendants Cwieka and Barchenger, as agents of defendant Car–Smarts, authorized or participated in the use of the "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations.

## VI

Plaintiff is the owner of United States Trademark Registration No. 1,142,514 for the mark "Kelley Blue Book and Design" for booklets in the nature of price lists for used cars, new cars, mobile homes and motorcycles. The trademark registration of this trademark indicates that to acquire the registration plaintiff disclaimed a right to the exclusive use of the words "Blue Book" apart from the mark as shown on the trademark registration.

## VII

Plaintiff has continuously sold its automotive publications to auto dealers, lending institutions and other interested members of the automotive industry under the name "Kelley Blue Book" since 1926 and has marketed its automobile service contracts, on-line computerized pricing information services and computer diskettes under the name "Kelley Blue Book" since 1976, 1982 and 1986 respectively.

## VIII

Within the last ten years plaintiff has spent more than $2.5 million to market its products and services and has widely advertised and promoted the sales of its automotive publications and related services under the name "Kelley Blue Book" throughout the United States and particularly in California. During the same ten years, plaintiff has sold over $70 million worth of automotive publications and services under the name "Kelley Blue Book." Due to its longstanding and extensive advertising and sales of its automotive publications and related services under the Kelley Blue Book name, plaintiff has acquired an established and reliable reputation in at least the five western states of California, Nevada, Arizona, Oregon and Hawaii for these publications and services.

## IX

The evidence introduced by plaintiff of its use of the phrase "blue book" standing alone does not support a finding that plaintiff has acquired a common law trademark in that phrase standing alone. However, plaintiff's sole and longstanding use of the mark "Kelley Blue Book" supports a finding that plaintiff has acquired a common law trademark in that phrase.

## X

The phrase "blue book," standing alone, refers to any number of items, including blank booklets used in taking examinations, directories of socially prominent persons, official British publications, a telephone directory and price guides for a wide variety of products. The evidence presented here does not indicate that the public interprets the phrase "blue book" to refer principally to any vehicle valuation guide or to valuation guides in general. Therefore, the Court finds that the phrase "blue book" is not a generic term for vehicle or other valuation guides.

## XI

As to the strength of plaintiff's trademark, the "Kelley Blue Book" trademark is a strong mark in the automotive field be-

cause it is distinctive as a whole and the descriptive portion of it has acquired a secondary meaning. In at least the five western states of California, Nevada, Arizona, Oregon and Hawaii the term "blue book," when referring to automotive pricing guides and automotive pricing information services, primarily denotes plaintiff as the source of origin.

## XII

As to the proximity of the goods, both parties offer pricing information for new and used automobiles.

## XIII

As to the similarity of plaintiff's and defendants' marks, plaintiff's "Kelley Blue Book" trademark and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations are substantially similar in sight, sound and appearance. Defendants' attempts to distinguish their marks from plaintiff by using their own business name along with their telephone designations have been inadequate. Considering plaintiff's and defendants' marks in their entirety and as they appear in the marketplace, the marks are confusingly similar.

## XIV

As to evidence of actual confusion, evidence was introduced indicating that on several occasions the parties received telephone inquiries from persons who believed that plaintiff was responsible for the telephone numbers maintained by defendants.

## XV

As to the marketing channels used, plaintiff sells its goods and services primarily to automotive dealers. Defendants sell their services primarily to non-auto dealer consumers. However, through banks, libraries and automobile dealers themselves, these latter consumers have access to and rely on the information conveyed in plaintiff's goods and services and defendants do not limit their sales to any particular class of consumers.

## XVI

As to the types of goods in question and the degree of care likely to be exercised by the purchaser, the reasonably prudent purchaser of plaintiff's automotive valuation goods and services is likely to believe that defendants' telephone numbers are actually being offered by plaintiff, absent a clear indication by defendants that it is defendants' company that is utilizing the "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" telephone numbers.

## XVII

As to defendants' intent in selecting the mark, the Court finds that defendants used. the phrase "blue book" in its telephone numbers with the intention of capitalizing on plaintiff's reputation as an authoritative source in the vehicle valuation field.

## XVIII

As to likelihood of expansion, the evidence indicates that plaintiff has considered and is considering plans to expand sales of its goods and services to consumers other than automotive dealers.

## XIX

In light of the factors discussed in Findings of Fact XI through XVIII above, there exists a likelihood of confusion in the vehicle valuation field in at least the states of California, Nevada, Arizona, Oregon and Hawaii between plaintiff's "Kelley Blue Book" trademark and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations.

## XX

Plaintiff has not introduced evidence of monetary damages resulting from defendants' actions. However, in light of the likelihood of confusion between plaintiff's and defendants' marks, defendants' use of the "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations is likely to harm plaintiff by diffusing plaintiff's "Kelley Blue Book" trademark. In addition, evidence that defendants have available to them scant financial resources supports a

finding that defendants' use of their telephone designations may injure plaintiff's reputation.

## XXI

Defendant has not proved by a preponderance of evidence that plaintiff has engaged in any misconduct which would render the issuance of an injunction inequitable.

## XXII

Plaintiff has not proved by clear and convincing evidence that defendants are guilty of oppression, fraud or malice in their actions giving rise to this lawsuit.

## XXIII

Any finding of fact herein which is deemed to be a conclusion of law is hereby incorporated in the following conclusions of law.

## CONCLUSIONS OF LAW

### I

Any conclusion of law herein which is deemed to be a finding of fact is hereby incorporated in the above findings of fact.

### II

This Court has jurisdiction over plaintiff's federal trademark infringement and false designation of origin claims pursuant to 28 U.S.C. § 1338(a) and 15 U.S.C. §§ 1121 and 1125(a). This Court has jurisdiction over plaintiff's state law claims for violation of the California Unfair Trade Practices Statute, common law unfair competition, common law trademark infringement, and dilution pursuant to 28 U.S.C. §§ 1338(b) and the doctrine of pendant jurisdiction.

*Plaintiff's Federal Trademark Infringement Cause of Action*

### III

Plaintiff's first cause of action alleges trademark infringement in violation of 15 U.S.C. § 1114(1)(a) (a portion of the Lanham Trade–Mark Act, 15 U.S.C. § 1051 *et seq.*). Section 1114 provides in part as follows:

(1) Any person who shall, without the consent of the registrant—

(a) use in commerce any reproduction, counterfeit, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods or services on or in connection with which such use is likely to cause confusion, or to cause mistake, or to deceive; . . . .

shall be liable in a civil action by the registrant for the remedies hereinafter provided.

15 U.S.C. § 1114(1)(a).

### IV

■ In order to prevail on a federal trademark claim, a plaintiff must establish both that it has a protected interest (or trademark right) in the product or service allegedly infringed upon, and that the defendant's usages are likely to cause consumer confusion and thus infringe upon that interest. *Levi Strauss & Co. v. Blue Bell, Inc.*, 778 F.2d 1352, 1354 (9th Cir. 1985).

*Protected Interest*

### V

■ Defendants argue that plaintiff's federal "Kelley Blue Book & Design" trademark does not protect plaintiff from uses by other parties of the term "blue book" alone, in that the term is generic or at least merely descriptive without a secondary meaning. Therefore, defendants claim, plaintiff has no federally protected right in this action, in that the only common element between plaintiff's trademark and defendants' designations is the phrase "blue book." However, even if the Court were to determine that the phrase "blue book" is generic or descriptive, such a conclusion does not automatically preclude a finding of federal trademark infringement.

### VI

When comparing two marks that contain the same generic term, "although the

marks ultimately must be considered as a whole, the focus of the inquiry regarding appearance and sound is on the non-generic portion." *John H. Harland Co. v. Clarke Checks, Inc.*, 711 F.2d 966, 976 (11th Cir. 1983). In addition, it has been held that "[w]hen the common element of two trademarks is a generic term, the likelihood of confusion is reduced, as the public has come to expect that element on different products." *Smithkline Beckman Corp. v. Proctor & Gamble Co.*, 591 F.Supp. 1229, 1238 (N.D.N.Y.1984) (citing J. McCarthy, Trademarks and Unfair Competition, § 23:15(F) p. 88 (2d ed. 1984)). It is apparent from these cases that while a conclusion by the Court that the phrase "blue book" is generic or descriptive would weigh against a finding of likelihood of confusion, such a conclusion would not relieve the Court of its duty to make the "likelihood of confusion" determination considering plaintiff's mark as a whole.

## VII

■ As to the question of whether the phrase "blue book" is generic, a trademark becomes generic "when the *principal* significance of the word to the public becomes the indication of the nature or class of an article, rather than the indication of the article's origin." *Coca–Cola Co. v. Overland, Inc.*, 692 F.2d 1250, 1254 n. 10 (9th Cir.1982). A trademark which is or becomes generic is not entitled to protection under the Lanham Act. *Id.*

## VIII

■ Whether a term is generic and thus not entitled to trademark status "turns on how the mark is understood by the purchasing public. There is no uniform test or formula to be applied in determining whether a term is or has become a common or generic name. Each case must be decided according to its facts." *In re Montrachet S.A.*, 878 F.2d 375, 376 (Fed.Cir.1989). Evidence of the public's understanding of the term "may be obtained from any competent source, such as consumer surveys, dictionaries, newspapers and other publications." *In re Northland Aluminum Products, Inc.*, 777 F.2d 1556, 1559 (Fed. Cir.1985).

## IX

It has been noted that when a question arises as to whether a term is generic, "if the word in issue has been used on many different types of products, the user can argue that the word could not be 'generic,' for it has been used on more than one 'genus' of products.... since the name has been used on a wide range of products, it could not be taken by the public to be the generic name of only one line or 'species' of those products." J. McCarthy, *Trademarks and Unfair Competition*, § 12:6, p. 542 (2d ed. 1984).

## X

■ As discussed under the foregoing findings of fact, the phrase "blue book," standing alone, refers to a number of items, including blank booklets used in taking examinations, directories of socially prominent persons, official British publications, a telephone directory and price guides for a wide variety of products. The evidence presented in this case does not indicate that the public interprets the phrase "blue book" to refer principally to any vehicle valuation guide or to valuation guides in general. Therefore, the Court concludes that the phrase blue book is not a generic term for vehicle valuation guides.

## XI

■ As to the question of whether the phrase "blue book" is descriptive, "[a] descriptive mark tells something about the product; it will be protected only when secondary meaning is shown." *AMF Inc. v. Sleekcraft Boats*, 599 F.2d 341, 348–49 (9th Cir.1979). The phrase "blue book," as applied to plaintiff's products, is descriptive of the appearance of the majority of those products and thus will be protected as part of plaintiff's mark only upon a showing of secondary meaning. The Ninth Circuit has held that "[s]econdary meaning is another way of expressing the distinctiveness of a trademark.... The basic element of secondary meaning is, thus, the mental associ-

ation by a substantial segment of consumers and potential consumers 'between the alleged mark and a single source of the product.'" *Levi Strauss, supra,* 778 F.2d at 1354.

## XII

Factors considered in determining whether a secondary meaning has been achieved include "(1) whether actual purchasers of the product bearing the claimed trademark associate the trademark with the producer, (2) the degree and manner of advertising under the claimed trademark, (3) the length and manner of use of the claimed trademark and, (4) whether use of the claimed trademark has been exclusive." *Id.* at 1358. A finding of secondary meaning may be confined to a limited territorial area. J. McCarthy, *Trademarks and Unfair Competition,* § 15:14, p. 693 (2d ed. 1984).

## XIII

■ As discussed in the foregoing findings of fact, plaintiff has exercised a long-standing, well-advertised and extensive use of the phrase "blue book" in conjunction with its Kelley Blue Book trademark. The evidence presented at trial of this use and of purchasers' perceptions of the term supports a conclusion that in at least the five western states of California, Nevada, Arizona, Oregon and Hawaii, the term "blue book," when referring to automotive pricing guides and automotive pricing information services, has acquired a secondary meaning primarily denoting plaintiff as the source of origin.

## XIV

Since the term "blue book" is not generic, and since as part of plaintiff's Kelley Blue Book trademark the term "blue book" has acquired a secondary meaning denoting plaintiff in at least the states noted above, this portion of plaintiff's trademark may be considered with equal weight in reaching a determination of likelihood of confusion between plaintiff's trademark and defendants' designations.

## *Likelihood of Confusion*

## XV

■ In an action for trademark infringement under 15 U.S.C. § 1114(1), the "central question is the 'likelihood of confusion' as to the identity or association" between plaintiff and defendant. *Alpha Industries v. Alpha Steel Tube & Shapes,* 616 F.2d 440, 443 (9th Cir.1980). The Ninth Circuit has held that "[l]ikelihood of confusion exists when consumers viewing the mark would probably assume that the product or service it represents is associated with the source of a different product or service identified by a similar mark." *Id.*

## XVI

■ In the case of *AMF Inc. v. Sleekcraft Boats,* 599 F.2d 341, 348–49 (9th Cir. 1979) the Ninth Circuit noted that in determining whether confusion between related products or services is likely, courts should consider the specific facts of the case, but also may consider eight factors, previously discussed under findings of fact XI through XVIII and discussed below again for emphasis.

## XVII

*Strength of the mark.* "A strong mark is inherently distinctive ... it will be afforded the widest ambit of protection from infringing uses.... A descriptive mark tells something about the product; it will be protected only when secondary meaning is shown ... In between lie suggestive marks which subtly connote something about the products.... [A] suggestive mark will be protected without proof of secondary meaning." *Id.* at 349. We find and conclude that plaintiff's "Kelley Blue Book & Design" trademark, when viewed as a whole, is a strong mark, in that it is inherently distinctive. This distinctiveness is not lessened by the "blue book" portion of the mark, since, as discussed above, this phrase is not generic, and has acquired a secondary meaning denoting plaintiff in at least the states of California, Nevada, Arizona, Oregon and Hawaii.

## XVIII

*Proximity of the goods.* The more likely the public is to make an association between the producers of related goods, "the less similarity in the marks is requisite to a finding of likelihood of confusion.... Thus, less similarity between the marks will suffice when the goods are ... similar in use and function." *AMF, supra,* 599 F.2d at 350. In this case, we find and conclude that a close proximity between plaintiff's and defendants' products has been shown in that both parties offer pricing information for new and used automobiles.

## XIX

*Similarity of the marks.* "Similarity of the marks is tested on three levels: sight, sound, and meaning." *Id.* at 351. Plaintiff's "Kelley Blue Book" trademark and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations are substantially similar in sight, sound and appearance. Defendants have made inadequate attempts to distinguish their marks from plaintiff by using their own business name along with their telephone designations. Considering plaintiff's and defendants' marks in their entirety and as they appear in the marketplace, we find and conclude that the marks are confusingly similar.

## XX

*Evidence of actual confusion.* "Evidence that use of the two marks has already led to confusion is persuasive proof that future confusion is likely." *Id.* at 352. Some evidence of actual confusion has been introduced by the parties, and we find and conclude that there has been actual confusion.

## XXI

*Marketing channels.* "Convergent marketing channels increase the likelihood of confusion." *Id.* at 353. Plaintiff sells its goods and services primarily to automotive dealers. Defendants sell their services primarily to non-auto dealer consumers. However, through banks, libraries and automobile dealers themselves, these consumers have access to and rely on the information conveyed in plaintiff's goods and services. We find and conclude that there are converging marketing channels here which increase the likelihood of confusion.

## XXII

*Type of goods and the degree of care likely to be exercised by the purchaser in purchasing the goods.* "In assessing the likelihood of confusion to the public, the standard used by the courts is the typical buyer exercising ordinary caution." *Id.* We find and conclude that the reasonably prudent purchaser of plaintiff's automotive valuation goods and services is likely to believe that defendants' telephone numbers, as defendants have advertised these services, are actually being offered by plaintiff.

## XXIII

*Defendant's intent in selecting the mark.* "When the alleged infringer knowingly adopts a mark similar to another's, reviewing courts presume that the defendant can accomplish his purpose: that is, that the public will be deceived." *Id.* at 354. The evidence supports a finding that defendants used the phrase "blue book" in its telephone numbers with the intention of capitalizing on plaintiff's reputation as an authoritative source in the vehicle valuation field and we so find and conclude.

## XXIV

*Likelihood of expansion of the product lines.* "[A] 'strong possibility' that either party may expand his business to compete with the other will weigh in favor of finding that the present use is infringing." *Id.* Evidence was introduced at trial indicating that plaintiff is considering plans to expand sales of its goods and services to consumers other than automotive dealers and that defendants do not limit their sales to any particular consumers, and we so find and conclude.

## XXV

In light of the factors discussed in findings of fact XI through XVIII and restated in conclusions of law XVII through XXIV above, there exists a likelihood of confusion in the vehicle valuation field in at least the states of California, Nevada, Arizona, Oregon and Hawaii between plaintiff's federal "Kelley Blue Book" trademark and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations. Therefore, plaintiff has proved an infringement of its federal trademark by defendants.

## XXVI

Remedies available to the owner of a right infringed under 15 U.S.C. § 1114(1) include injunctive relief (15 U.S.C. § 1116(a)).

### *Plaintiff's Federal False Designation of Origin Cause of Action*
## XXVII

Plaintiff's second cause of action alleges false designation of origin in violation of 15 U.S.C. § 1125(a). Section 1125(a) provides as follows:

(a) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which—

(1) is likely to cause confusion, or to cause mistake, or to deceive as to the affiliation, connection, or association of such person with another person, or as to the origin, sponsorship, or approval of his or her goods, services, or commercial activities by another person
. . .

shall be liable in a civil action by any person who believes that he or she is likely to be damaged by such act.

15 U.S.C. § 1125(a).

## XXVIII

The same likelihood of confusion test is applied under both 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114. *International Order of Job's Daughters v. Lindeburg & Co.*, 633 F.2d 912, 917 (9th Cir. 1980). Claims under § 1125 may concern not just similarity of names of products, but also similarity in the overall trade dress of the products. *Sun–Fun Products v. Suntan Research & Development*, 656 F.2d 186, 192 (5th Cir.1981). In this case, however, the similarity in appearance between plaintiff's and defendants' products is solely in their names rather than in their general appearance. Thus, the question under 15 U.S.C. § 1125(a) is whether defendants in using the designations "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" for their telephone numbers are using a term that is likely to cause confusion.

## XXIX

As discussed above, there does exist a likelihood of confusion in the vehicle valuation field in at least the states of California, Nevada, Arizona, Oregon and Hawaii between plaintiff's "Kelley Blue Book" designation and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations. Therefore, plaintiff has proved a violation of 15 U.S.C. § 1125(a).

## XXX

Remedies available for the violation of 15 U.S.C. § 1125(a) include injunctive relief (15 U.S.C. § 1116(a)).

### *Plaintiff's California Unfair Trade Practices Cause of Action*
## XXXI

Plaintiff's third cause of action alleges unfair trade practices in violation of California Business and Professions Code § 17200 *et seq.* Section 17200 provides in part that "unfair competition shall mean and include unlawful, unfair or fraudulent business practice and unfair, deceptive, untrue or misleading advertising." Cal.Bus. & Prof.Code § 17200 (West 1987).

## XXXII

The federal Lanham Act and California law of unfair competition are "substantially congruent," *Job's Daughters, supra,* 633

F.2d at 916, and it has been held in this district that "[t]he primary consideration in trademark-related unfair competition cases in California, as elsewhere, is the likelihood of confusion." *Academy of Motion Picture Arts v. Creative House Promotions, Inc.,* 728 F.Supp. 1442, 1452 (C.D.Cal.1989).

## XXXIII

As discussed above, there does exist a likelihood of confusion in the vehicle valuation field in at least the states of California, Nevada, Arizona, Oregon and Hawaii between plaintiff's "Kelley Blue Book" designation and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations. Therefore, plaintiff has proved a violation of Cal.Bus. & Prof.Code § 17200.

## XXXIV

Remedies available for the violation of Cal.Bus. & Prof.Code § 17200 include injunctive relief (Cal.Bus. & Prof.Code § 17203).

### *Plaintiff's Common Law Unfair Competition Cause of Action*

## XXXV

Plaintiff's fourth cause of action alleges common law unfair competition. The test for common law unfair competition is the same "likelihood of confusion" test discussed above, *Academy of Motion Picture Arts, supra,* 728 F.Supp. at 1451–52, and again as discussed above, there does exist a likelihood of confusion in the vehicle valuation field in at least the states of California, Nevada, Arizona, Oregon and Hawaii between plaintiff's "Kelley Blue Book" designation and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations. Therefore, plaintiff has proved common law unfair competition on the part of defendants.

## XXXVI

Plaintiff alleges that it is entitled to punitive damages under its common law unfair competition cause of action, in that defendants' acts of unfair competition were "oppressive, fraudulent and malicious."

California Civil Code § 3294 provides in part as follows:

> In an action for the breach of an obligation not arising from contract, where it is proven by clear and convincing evidence that the defendant has been guilty of oppression, fraud, or malice, the plaintiff, in addition to the actual damages, may recover damages for the sake of example and by way of punishing the defendant.

Cal.Civ.Code § 3294(a) (West Supp.1992).

## XXXVII

Plaintiff has not proved by clear and convincing evidence that defendants have been guilty of oppression, fraud or malice in their actions giving rise to this lawsuit. Therefore, plaintiff is not entitled to recover punitive damages under its common law unfair competition cause of action.

### *Plaintiff's Common Law Trademark Infringement Cause of Action*

## XXXVIII

Plaintiff's fifth cause of action alleges common law trademark infringement. Plaintiff alleges rights to the common law trademarks "Kelley Blue Book" and "Blue Book." Under California common law, "[t]o constitute adoption, a trademark or trade name must be appropriated and used as such. However, registration is not necessary for acquisition of a trademark or trade name." 59 Cal.Jur.3d, Trademarks and Tradenames § 11 (1980).

## XXXIX

California common law also provides that "whosoever first adopts and uses a trade name, either within or without the state, is its original owner." *American Petrofina v. Petrofina of California, Inc.,* 596 F.2d 896, 897 (9th Cir.1979). This rule applies to trademarks as well as tradenames. 59 Cal.Jur.3d, Trademarks and Tradenames § 12 (1980).

## XL

The evidence introduced by plaintiff of its use of the phrase "blue book"

standing alone does not support a finding that plaintiff has acquired a common law trademark in that phrase standing alone. However, plaintiff's sole and longstanding use of the mark "Kelley Blue Book" supports a finding that plaintiff has acquired a common law trademark in that phrase.

### XLI

The same likelihood of confusion analysis discussed above may be used in determining whether an infringement of a common law trademark has occurred. *Academy of Motion Picture Arts, supra,* 728 F.Supp. at 1451-52.

### XLII

As discussed above, there does exist a likelihood of confusion in the vehicle valuation field in at least the states of California, Nevada, Arizona, Oregon and Hawaii between plaintiff's "Kelley Blue Book" designation and defendants' "1-900-BLU-BOOK" and "1-800-BLUE-BOOK" designations. Therefore, plaintiff has proved common law trademark infringement on the part of defendants.

### *Plaintiff's Dilution of Trademark Rights Cause of Action*
### XLIII

Plaintiff's sixth cause of action alleges dilution of trademark rights in violation of California Business and Professions Code § 14330. Section 14330 provides as follows:

> Likelihood of injury to business reputation or of dilution of the distinctive quality of a mark registered under this chapter, or a mark valid at common law, or a trade name valid at common law, shall be a ground for injunctive relief notwithstanding the absence of competition between the parties or the absence of confusion as to the goods or services.

Cal.Bus. & Prof.Code § 14330 (West Supp. 1992).

### XLIV

The Ninth Circuit has held that "[i]t is clear that anti-dilution statutes such as this one are designed to protect only strong, well-recognized marks." *Accuride International, Inc. v. Accuride Corp.,* 871 F.2d 1531, 1539 (9th Cir.1989) (quoting *Sykes Laboratory, Inc. v. Kalvin,* 610 F.Supp. 849, 858 (C.D.Cal.1985) ("[t]he dilution doctrine is only available to protect distinctive marks as exemplified by such famous names as 'Tiffany,' 'Polaroid,' 'Rolls Royce,' and 'Kodak'")). Terms that are suggestive or descriptive are generally not sufficiently distinctive to merit protection under section 14330. *Id.*

### XLV

As discussed above, the common element of plaintiff's "Kelley Blue Book" designation and defendants' "1-900-BLU-BOOK" and "1-800-BLUE-BOOK" designations is the term "blue book," which is a descriptive term. It is true that plaintiff has shown a secondary meaning in this term and that the term is combined with the Kelley name in plaintiff's trademark. However, especially in light of its descriptive elements, the mark overall does not have the strength of marks such as "Rolls Royce" and "Kodak." Therefore, plaintiff may not prevail under its dilution cause of action.

### *Defendants' First Affirmative Defense*
### XLVI

Defendants' first affirmative defense asserts that plaintiff's first amended complaint fails to state a cause of action against the defendants, in that it fails to allege any act by the defendants in violation of any right possessed by plaintiff. Pleadings are construed liberally in favor of the pleader, and in challenging the sufficiency of a complaint, all of its material allegations are taken as true. *Jenkins v. McKeithen,* 395 U.S. 411, 421, 89 S.Ct. 1843, 1848, 23 L.Ed.2d 404 (1969). Plaintiff's allegations in its first amended complaint, if true, would support each of its causes of action. Therefore, defendants' affirmative defense of failure to state a cause of action is without merit.

*Defendants' Second Affirmative Defense*

### XLVII

Defendants' second affirmative defense asserts that "the phrase 'blue book' is either generic or so highly descriptive that the Plaintiff can have no exclusive right in it, and therefore possesses none of the rights upon which the present action is founded." As discussed above, the Court finds and concludes that the term "blue book" is not generic and that, to the extent that the term is merely descriptive, it has acquired a secondary meaning denoting plaintiff in at least the states of California, Nevada, Arizona, Oregon and Hawaii. Therefore, defendants' second affirmative defense is without merit.

*Defendants' Third and Fourth*
*Affirmative Defenses*

### XLVIII

 Defendants' third affirmative defense asserts that "Plaintiff, by virtue of having disclaimed any exclusive right in the phrase 'blue book,' is estopped from asserting the rights alleged in the First Amended Complaint." Defendants' fourth affirmative defense asserts that "Plaintiff, by virtue of having disclaimed any exclusive right in the phrase 'blue book,' has waived any right it may have had in that phrase and therefore does not possess any of the rights alleged to have been violated in the First Amended Complaint."

### XLIX

The Lanham Act specifically provides that "[n]o disclaimer, including those made under subsection (e) of section 1057 of this title shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter, or his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services." 15 U.S.C. § 1056(b) (West Supp.1992). In addition, the Ninth Circuit has held that in determining whether infringement of a trademark has occurred, "[d]isclaimed material forming part of a registered trademark cannot be ignored. It is still part of the composite trademark which must be considered in its entirety." *Sleeper Lounge Co. v. Bell Manufacturing Co.*, 253 F.2d 720, 722 n. 1 (9th Cir. 1958). Thus, under the Lanham Act and Ninth Circuit authority, plaintiff's disclaimer of the phrase "blue book" cannot be considered a waiver and does not estop plaintiff from asserting its rights under its Kelley Blue Book trademark.

*Defendants' Fifth Affirmative Defense*

### L

 Defendants' fifth affirmative defense asserts that the "Defendants' use of the phrase 'blue book' is for the purpose, at least in substantial part, of obtaining information and therefore the use of that phrase is permitted and protected by the First Amendment to the Constitution of the United States."

### LI

In affirming the granting of an injunction in a trademark infringement case, the Ninth Circuit has held that "[c]ommercial speech may be regulated when its content is otherwise false or misleading." *Transgo, Inc. v. Ajac Transmission Parts Corp.*, 768 F.2d 1001, 1022 (9th Cir.1985). The court in *Transgo* concluded that defendant's argument that the injunction violated its first amendment rights lacked merit, in that substantial evidence was presented at trial to show that defendant's use of certain terms was misleading. *Id.* In this case, substantial evidence was introduced at trial indicating that defendants' use of their "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations is misleading in that it is likely to cause confusion among consumers. Therefore, defendants' first amendment affirmative defense lacks merit.

*Defendants' Sixth Affirmative Defense*

### LII

 Defendants' sixth affirmative defense asserts that the "Plaintiff comes into Court with unclean hands, in that by the present action it seeks to prevent the Defendants from further using a particular telephone number or numbers so that the

Plaintiff can acquire and use those numbers, even though the Plaintiff knows that it possess [sic] no exclusive right in the phrase 'blue book.'"

### LIII

 A defendant to a trademark action in which relief in the form of an injunction is sought may assert "unclean hands" as a defense. *See Coca–Cola v. Overland, Inc.,* 692 F.2d 1250, 1256 (9th Cir.1982). In considering a defense of unclean hands, the Court must determine whether the defendant has demonstrated that the plaintiff "has engaged in any misconduct which would render the issuance of an injunction inequitable." *U–Haul International, Inc. v. Jartran, Inc.,* 522 F.Supp. 1238, 1254 (D.Ariz.1981).

### LIV

 It has been held that "[i]t is only when the plaintiff's improper conduct is the source, or part of the source ... of his equitable claim, that he is to be barred because of this conduct. What is material is not that the plaintiff's hands are dirty, but that he dirties them in acquiring the right he now asserts." *Id.* at 1254–55 (quoting Dobbs, *Handbook on the Law of Remedies* § 2.4 at 46 (1973)). The defense of "unclean hands" is generally disfavored. *Id.* at 1255.

### LV

Defendant has not proved by a preponderance of evidence that plaintiff has engaged in any misconduct which would render the issuance of an injunction inequitable. Therefore, defendants' unclean hands defense is without merit.

*Defendants' Seventh Affirmative Defense*

### LVI

 Defendants' seventh affirmative defense asserts that "[s]ince Defendant Barchenger has not directed or controlled any of the allegedly infringing acts, he is not individually liable to the Plaintiff."

### LVII

The Ninth Circuit has held that a "corporate officer or director is, in general, personally liable for all torts which he authorizes or directs or in which he participates, notwithstanding that he acted as an agent of the corporation and not on his own behalf." *Transgo, supra,* 768 F.2d at 1021. The *Transgo* court went on to hold that a principal of the defendant corporation was personally liable for the defendant corporation's acts of unfair competition, where evidence indicated that the principal played an instrumental role in those acts. *Id.* The evidence presented at trial shows that defendant Barchenger, as an officer of defendant Car–Smarts, authorized or participated in the use of the "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations. Therefore, defendants' seventh affirmative defense is without merit.

*Remedies*

### LVIII

 *Money Damages.* Monetary recovery for trademark infringement and unfair competition is measured variously by defendant's profits, plaintiff's actual business damages and losses caused by the wrong, or plaintiff's loss of profits caused by the wrong. J. McCarthy, *Trademarks and Unfair Competition,* § 30:24 p. 494 (2d ed. 1984). *See, e.g.* 15 U.S.C. § 1117(a) (allowing damages for federal trademark infringement and false designation of origin actions); and *United Farm Workers v. Superior Court, County of Kern,* 47 Cal. App.3d 334, 344, 120 Cal.Rptr. 904, 911 (1975) (allowing damages for California unfair trade practices actions). The evidence introduced at trial shows that defendants did not recover profits from their infringing acts. In addition, plaintiff has made no showing of money damages to it resulting from any of its causes of action. Therefore, no money damages will be awarded to plaintiff.

### LIX

 *Punitive and Exemplary Damages.* Remedies available to the owner of a right infringed under 15 U.S.C. § 1114(1)

also include treble damages for intentional violations. 15 U.S.C. § 1117(b) (West Supp. 1992). Section 1117(b) does not apply in this action, in that the Court has not assessed damages under 15 U.S.C. § 1117(a). As discussed above, plaintiff is also not entitled to punitive damages under California Civil Code § 3294 for its common law unfair competition cause of action, in that plaintiff has not proved by clear and convincing evidence that defendants are guilty of oppression, fraud or malice in their actions giving rise to this lawsuit.

## LX

■ *Attorney's Fees.* The Lanham Act provides that in trademark infringement cases, the "court in exceptional cases may award reasonable attorney fees to the prevailing party." 15 U.S.C. § 1117(a) (West Supp.1992). In addition, the Act provides that except where the court finds "extenuating circumstances," the plaintiff should be awarded "a reasonable attorney's fee" in cases of intentional trademark infringement. 15 U.S.C. § 1117(b) (West Supp. 1992). The Ninth Circuit has held by analogy to patent law that a party that reasonably believes that its usage of a term is not barred by the Lanham Act has not committed willful infringement entitling the plaintiff to attorney's fees. *International Olympic Committee v. San Francisco Arts & Athletics*, 781 F.2d 733, 738–39 (9th Cir.1986), amended 789 F.2d 1319 (9th Cir. 1986). Defendants introduced some evidence at trial supporting their reasonable belief that their use of the term "blue book" would not infringe on plaintiff's Kelley Blue Book trademark and, based thereon, we find and conclude that plaintiff is not entitled to attorney's fees under 15 U.S.C. § 1117.

## LXI

■ *Destruction of Infringing Articles.* The Lanham Act provides that in an action in which a federal trademark infringement is established, the court may order the defendant to deliver up and destroy all infringing "labels, signs, prints, packages, wrappers, receptacles, and advertisements." 15 U.S.C. § 1118 (West Supp.1992). It has been held that where an injunction is issued under the Lanham Act enjoining an infringer from further infringement, the rights of the plaintiff are adequately protected and an order requiring destruction of infringing articles, though permitted, may be unnecessary. *Neva, Inc. v. Christian Duplications International, Inc.*, 743 F.Supp. 1533, 1549 (M.D.Fla.1990). In light of the injunction, discussed below, to be entered by the Court in this matter, an order requiring the destruction of any infringing articles in the possession of the defendants is unnecessary.

## LXII

*Injunction.* The traditional remedy for unfair competition and trademark infringement cases is the equitable remedy of injunction. J. McCarthy, *Trademarks and Unfair Competition*, § 30:1 p. 465 (2d ed. 1984). The Lanham Act codifies this traditional remedy, stating that the courts "shall have power to grant injunctions, according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark registered in the Patent and Trademark Office or to prevent a violation under section 1125(a) of this title." 15 U.S.C. § 1116(a) (West Supp. 1992).

## LXIII

Section 1116(a) further provides that "[a]ny such injunction may include a provision directing the defendant to file with the court and serve on the plaintiff within thirty days after the service on the defendant of such injunction, or such extended period as the court may direct, a report in writing under oath setting forth in detail the manner and form in which the defendant has complied with the injunction." 15 U.S.C. § 1116(a) (West Supp.1992).

## LXIV

■ In trademark cases, the courts are given flexibility in fashioning injunctive relief, and "the scope of the injunction to be

entered depends upon the manner in which plaintiff is harmed, the possible means by which that precise harm can be avoided, the viability of the defenses raised, and the relative inconvenience that would be caused to defendant by each of the several means of avoidance." J. McCarthy, *Trademarks and Unfair Competition*, § 30:3 p. 466 (2d ed. 1984).

## LXV

■ Injunctive relief in cases involving spelled-out telephone numbers may be narrowly fashioned. Thus in one case where defendant's spelled-out telephone number ("(800) LAWYERS") created a likelihood of confusion with plaintiff's name, the Court did not prohibit defendant from using the telephone number, but rather enjoined the defendant from advertising or in any way using the telephone number as the plaintiff did, "with any symbols resembling dots or hyphens between the letters of the word 'LAWYERS' when that word is used to indicate a telephone number." *Murrin v. Midco Communications, Inc.*, 726 F.Supp. 1195, 1201 (E.D.Mo.1989).

## LXVI

In the present case, the Court has concluded that there exists a likelihood of confusion between plaintiff's "Kelley Blue Book" designation and defendants' "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" designations in the states of California, Nevada, Arizona, Oregon and Hawaii, in that plaintiff has shown that at least in those states the term "blue book" has acquired a secondary meaning denoting plaintiff as the source of origin.

In light of this conclusion, and as set forth in the Court's Judgment in this matter, the Court enjoins defendants from using the phrase "blue book" or any confusingly similar phrase in the states of California, Nevada, Arizona, Oregon and Hawaii (1) in connection with the advertising, distribution, offering for sale or sale of any automobile pricing information, or (2) as part of an "800" or "900" telephone number used in connection with automobile pricing information. Also as set forth in the Court's Judgment, defendants are ordered to file with the Court and serve upon plaintiff, within thirty days of the issuance of the Court's Judgment, a report detailing defendants' compliance with the Court's injunction.

## JUDGMENT

This matter having come on for trial before the Court sitting without a jury, the Honorable Lawrence T. Lydick, United States District Judge, presiding; and the issues having been tried and written findings of fact and conclusions of law having been rendered,

IT IS ORDERED AND ADJUDGED:

1. That defendants, Car–Smarts Inc., Daniel T. Cwieka and Jay Barchenger and each of them and their officers, agents, servants, employees, successors, and assigns and persons acting in concert or participation with them or any of them, are hereby permanently enjoined in the states of California, Nevada, Arizona, Oregon and Hawaii, from:

(a) using the phrase "blue book", "blu book" or any word, words, symbol, symbols, phrase or term confusingly similar thereto alone or prominently displayed in promotional material, advertisements, signs, or in any other way in connection with the advertising, distribution, offering for sale or sale of any automobile pricing information not emanating from or authorized by plaintiff; and

(b) displaying in any way the phrase "blue book", "blu book" or any word, words, symbol, symbols, phrase or term confusingly similar thereto as part of an "800" or "900" or other telephone number used in connection with automobile pricing information; and

2. That defendants shall file with the Court and serve upon plaintiff within thirty days after the issuance of this Judgment a report in writing and under oath setting forth in detail the manner and form in which defendants have complied with the foregoing injunction.

3. That plaintiff shall recover its costs of suit incurred herein.