**800 SPIRITS INC., Plaintiff,**

v.

**LIQUOR BY WIRE, INC., Defendant.**

**No. 96–5935 (WHW).**

United States District Court,
D. New Jersey.

July 14, 1998.

Ronald Gould, Brooks Bruneau, Mathews, Collins, Shepherd & Gould, Princeton, NJ, for plaintiff.

Adam Derman, Arthur Goldstein, Wolff & Samson, Roseland, NJ, Charles A. Laff, Martin L. Stern, G. Peter Albert, Jr., Laff, Whitesel, Conte & Saret, Ltd., Chicago, IL, for defendant.

## OPINION

WALLS, District Judge.

This matter arises from the alleged use of the alpha-numeric telephone number "1–800–SPIRITED" by defendant Liquor by Wire, Inc. ("Liquor by Wire"). In its Complaint, plaintiff 800 Spirits, Inc. ("800 Spirits") claims that defendant's use and advertisement of this telephone number infringes upon its statutory and common law rights to its unregistered trade name and service mark "800 SPIRITS." Defendant moves for summary judgment in its favor on all counts. Under Fed.R.Civ.P. 78, the Court decides this motion without oral argument. For the following reasons, the motion is granted.

## Factual Background

800 Spirits and Liquor by Wire are competitors in the business of gift delivery service of alcoholic beverages. Both market their products through catalogs and brochures mailed to consumers and corporations. Customers may place orders by phone, facsimile, or electronic transmission. Liquor By Wire, through its predecessor Foremost Sales Promotions, Inc., has been in operation for over fifty years and services customers in thirty states and more than thirty other countries. Gail Zelitzky Decl. ¶ 2. Plaintiff advertises in magazines and newspapers throughout the United States and internationally and has provided services under the name 800 Spirits since 1979. *See* Brooks R. Bruneau Decl., Exh. D. Plaintiff maintains that the company was originally called 800 Spirits as a hyperbole or exaggeration of the member of gifts that it could deliver. Pl's Answer to Interrog. No. 11.

Plaintiff originally registered its "800 SPIRITS" service mark with the United States Patent and Trademark Office (the "PTO") on August 18, 1981 under Registration No. 1,165,835. *Id.* It disclaimed the exclusive right to use "spirits" apart from the mark. *Id.* The service mark registration lapsed after some years when plaintiff failed to file a Declaration of Continuing Use. *See* Harvey Ishofsky Supp.Decl.[1] ¶ 5. Notwithstanding the lapse, plaintiff has continued to use the service mark and displays it prominently on its catalogs and other advertising materials. Ishofsky Decl., Exhs. A and B.

---

1. Defendant objected to various portions of Harvey Ishofsky's declaration on several grounds including that his assertions were not based on his personal knowledge and that they contained impermissible legal conclusions. Plaintiff challenged the merit of these objections and submitted a supplemental declaration by Ishofsky to clarify the foundation for his statements. In deciding this motion, the Court relies only marginally on Ishofsky's declarations and only on those portions that comply with Fed.R.Civ.P. 56(e).

Sometime after plaintiff began using the service mark, it investigated the availability of the alpha-numeric telephone number 1–800–SPIRITS (1–800–774–7487). Pl.'s Admission No. 4. Its attempt to obtain this mnemonic telephone designation was unsuccessful because the toll-free number had been assigned to another company. Pl.'s Admission No. 6. Liquor By Wire contends that this number is presently used by 800 Flowers, another company engaged in the gift delivery business. Zelitzky ¶ 7. Plaintiff instead has employed "1–800–BE–THERE" (1–800–238–4373) as its business number since 1979.

In February 1992, Liquor by Wire formed a separate corporation called Spirited Productions, Ltd. ("Spirited Productions") to provide marketing services for its gift delivery business. Zelitzky Decl. ¶ 5. On February 7, 1995, Spirited Productions registered the service mark "SPIRITED PRODUCTIONS LTD." for use in its "marketing and consulting services." [2] Adam Derman Certif., Exh. F. Defendant then embarked on a substantial advertising campaign that utilized the term "spirit" or a variation thereof to promote its gift delivery services. For example, Liquor By Wire published a newsletter entitled "Spirit Talk" and created slogans such as "Discover the Spirit of Corporate Gift Giving," "Send a Gift with Spirit," and "Spirited Moments Deserve Gifts and Spirit!" Zelitzky Decl. ¶ 6. It was at this time that defendant also adopted the mnemonic telephone number "1–800–SPIRITED" (1–800–774–7483),[3] which is displayed prominently in its mail order catalogs and other marketing materials. Derman Certif., Exh. D and E.

In October 1995, plaintiff applied again for registration of "800 SPIRITS" as its service mark. *Id.,* Exh. G. The examining attorney of the PTO initially rejected the application on the ground that "the proposed mark merely describes the services" provided:

> Applicant's mark is 800 SPIRITS for mail order services. The term "800" likely is understood as indicating either the applicant's toll-free telephone area code or as the number of different alcoholic beverages available through the applicant's mail order service. "SPIRITS" is a generic designation as applied to the applicant's service. Viewing the mark in its entirety, it comprises nondistinctive terms combined to form a nondistinctive whole that is incapable of registering. This determination is appropriate regardless of which construction is given to the term "800."

*Id.,* Exh. H. However, the examining attorney noted that he would "consider withdrawing the refusal if the applicant (1) states for the record that the '800' portion of the mark is not used (and will not be used) to indicate a phone number; (2) the applicant demonstrates that the term '800' does not have any other descriptive significance; and (3) the applicant disclaims the term 'SPIRITS.'" *Id.,* Exh. H. In later letters to the examiner, plaintiff complied with these conditions. *Id.,* Exh. I and J. However, plaintiff soon changed its position by only agreeing not to use the mark solely as a telephone number; it reserved the right to use the mark as a number incidental to its continuing use of 800 SPIRITS as a corporate identifier. *Id.,* Exh. K.

In December 1996, plaintiff brought this trademark infringement action against defendant to obtain injunctive and monetary relief. Its four-count Complaint alleges that Liquor By Wire's use of the telephone number "1–800–SPIRITED" constitutes a false designation of origin in violation of 15 U.S.C. § 1125(a) (Count One), dilution of plaintiff's famous 800 SPIRITS name and mark in violation of 15 U.S.C. § 1125(c) (Count Two), an appropriation of plaintiff's name, mark, reputation and/or goodwill in violation of The New Jersey Trademark Act, N.J.S.A. § 56:4–1 (Count III), and a violation of the common law of unfair competition (Count IV). Sometime thereafter, defendant began to advertise and use the number "1–888–SPIRITED" in

---

**2.** The "FOREMOST LIQUOR BY WIRE" and "LIQUOR BY WIRE" service marks were registered in 1986 and 1994, respectively, for use in connection with defendant's gift delivery services, retail liquor services, and telephone shop at home services including delivery arrangements. Bruneau Decl., Exh. C.

**3.** The last letter, "D," does not correspond to a digit in the seven digit toll-free number.

addition to "1–800–SPIRITED." Defendant has filed Counterclaims for unfair competition and a declaratory judgment that plaintiff has no protectible rights in the mark "800 SPIRITS."

In May 1997, Liquor By Wire filed a notice of opposition to plaintiff's application to register "800 SPIRITS" with the PTO. Bruneau Decl., Exh. E. The PTO has stayed its proceedings pending a final determination of the instant case. *Id.*, Exh.´L.

### Legal Standard for Summary Judgment

Summary judgment is appropriate where the moving party establishes that "there is no genuine issue of material fact and that [it] is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The moving party must show that if the evidentiary material of record were reduced to admissible evidence in court, it would be insufficient to permit the non-moving party to carry its burden of proof. *See Celotex v. Catrett*, 477 U.S. 317, 318, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

Once the moving party has carried its burden under Rule 56, "its opponent must do more than simply show that there is some metaphysical doubt as to the material facts in question." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). The opposing party must set forth specific facts showing a genuine issue for trial and may not rest upon the mere allegations or denials of its pleadings. *See Sound Ship Building Corp. v. Bethlehem Steel Co.*, 533 F.2d 96, 99 (3d Cir.1976), *cert. denied*, 429 U.S. 860, 97 S.Ct. 161, 50 L.Ed.2d 137 (1976).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). In doing so, the court must construe the facts and inferences in the light most favorable to the non-moving party.

### Analysis

Plaintiff claims trademark infringement under Section 43(a) of the Lanham Act (Count One), The New Jersey Trademark Act (Count Three), and the common law (Count Four). It is well-established that the analysis for all of these claims is the same. *See Harlem Wizards Entertainment Basketball, Inc. v. NBA Properties, Inc.*, 952 F.Supp. 1084, 1091 (D.N.J.1997); *FM 103.1, Inc. v. Universal Broadcasting of New York, Inc.*, 929 F.Supp. 187, 198 (D.N.J.1996). "[S]ervice marks, which are used to identify the source of the services, are entitled to the same legal protection as trademarks, which are used to identify the source of the goods." *Dranoff–Perlstein Assocs. v. Sklar*, 967 F.2d 852, 855 (3d Cir.1992) (citing 1 Jerome Gilson, *Trademark Protection and Practice* § 1.02[1][b], at 1–11 (1991)).

■ To prevail on a trademark or service mark claim, a plaintiff must show that (1) the mark is valid and legally protectible; (2) the plaintiff owns the mark; and (3) the defendant's use of the mark to identify goods or services is likely to create confusion concerning the origin of the goods or services. *See Fisons Horticulture, Inc. v. Vigoro Indus., Inc.*, 30 F.3d 466, 472 (3d Cir.1994). Section 43(a)(1) of the Lanham Act protects unregistered marks to the same extent as registered marks because trademark rights emanate from use and not merely registration. *See Two Pesos, Inc. v. Taco Cabana, Inc.*, 505 U.S. 763, 768, 112 S.Ct. 2753, 120 L.Ed.2d 615, *reh'g denied*, 505 U.S. 1244, 113 S.Ct. 20, 120 L.Ed.2d 947 (1992); *Harlem Wizards*, 952 F.Supp. at 1092. However, if the mark has not been federally registered or is registered but has not achieved incontestability, the mark is only valid and legally protectible if the plaintiff shows that the mark is inherently distinctive or has secondary meaning—consumer recognition that the mark identifies the source of the service or product. *See Harlem Wizards*, 952 F.Supp. at 1092.

Trademark law evaluates marks along a continuum of distinctiveness, from the inherently distinctive to the nondistinctive. The Third Circuit has characterized these categories as:

arbitrary (or fanciful) terms, which bear "no logical or suggestive relation to the actual characteristics of the goods [or ser-

vices];" suggestive terms which suggest rather than describe the characteristics of the goods [or services]; descriptive terms, which describe a characteristic or ingredient of the article [or service] to which it refers, and generic terms, which function as the common descriptive name of a product [or service] class.

*A.J. Canfield Co. v. Honickman,* 808 F.2d 291, 296 (3d Cir.1986) (quoting *Keebler Co. v. Rovira Biscuit Corp.,* 624 F.2d 366, 374 n. 8 (1st Cir.1980)). The scope of protection depends on the distinctiveness of the mark. "Consequently, generic terms receive no trademark protection; descriptive marks are protected only if the mark has achieved 'secondary meaning' in the relevant community; and suggestive, arbitrary, and fanciful marks are deemed inherently distinctive, and thus entitled to full protection." *Mil–Mar Shoe Co., Inc. v. Shonac Corp.,* 75 F.3d 1153, 1156 (7th Cir.1996) (citing *Two Pesos,* 505 U.S. at 767–68, 112 S.Ct. 2753).

The parties dispute whether the mark "800 SPIRITS" should be considered generic or descriptive. The Court focuses on the more narrow issue before it: whether plaintiff may preclude a competitor from using the toll-free telephone number 1–800–SPIRITED based on a theory of trademark infringement.

### A. The Genericness of the Term "Spirits"

■ Although the Court recognizes that the genericness of a composite mark generally must be assessed by evaluating the mark in its entirety, *see Mil–Mar Shoe,* 75 F.3d at 1161, in this instance it is necessary to first categorize the term "spirits" alone. A term is generic if it functions as the common descriptive name of a class of goods or services. *See Harlem Wizards,* 952 F.Supp. at 1092. "Courts refuse to protect a generic term because competitors need it more to describe their goods than the claimed markholder needs it to distinguish its goods from others." *A.J. Canfield,* 808 F.2d at 304. A court must apply the primary significance test to evaluate the genericness of a mark. *See Berner Int'l Corp. v. Mars Sales Co.,* 987 F.2d 975, 980 (3d Cir.1993); 15 U.S.C. § 1064. The crucial inquiry is the primary significance of the mark to the relevant consuming public: "The test for genericness is whether consumers think the term represents 'the generic name of the product [or service] or a mark indicating merely one source of that product [or service].'" *Dranoff–Perlstein,* 967 F.2d at 859 (quoting 1 J. Thomas McCarthy, *McCarthy, on Trademarks and Unfair Competition,* § 12:2, at 522 (2d ed.1984)).

■ It is clear that the term "spirits" considered alone is generic and consequently not protectible when employed to identify the source of gifts of alcoholic beverages. "Spirits" is commonly perceived and understood by consumers to be an alternative designation for alcoholic beverages. Dictionary definitions are often relevant, although not determinative, in evaluating common public usage and the consumer's conception of a mark's meaning. *See* 2 J. Thomas McCarthy, *McCarthy on Trademarks and Unfair Competition,* § 12:13, at 12–27 (4th ed.1997). The American Heritage Dictionary (3d ed.1992) defines spirits as "[a]n alcoholic beverage, especially distilled liquor." The plaintiff uses the term "spirits" in its catalogs to refer to alcoholic gifts: "If the proponent of trademark status itself uses the term as a generic name, this is strong evidence of genericness." *Id.* Moreover, 800 Spirits impliedly recognized the descriptive character of the word "spirits" through its disclaimer of exclusive use of the term in its registration application. The Court agrees with the PTO's conclusion that "'SPIRITS' is a generic designation when applied to the applicant's service." Derman Certif., Exh. H. To allow a company engaged in the business of liquor delivery to appropriate the term "spirits" for its exclusive use would impermissibly bar competitors from adequately describing and marketing their services. No reasonable trier of fact could find otherwise.

### B. Defendant's Right to Use the Mnemonic Telephone Number

Thus, the question before the Court is whether a company with a service mark comprised of the number "800," which, coincidentally or not, is one of only three toll-free

telephone area codes,[4] and a purely generic term may preclude its competitor from using and advertising a mnemonic toll-free telephone number that utilizes the same generic term or a derivative thereof. Defendant maintains that the Third Circuits's holding in *Dranoff–Perlstein Associates v. Sklar,* 967 F.2d 852 (3d Cir.1992), precludes a finding of infringement under these circumstances. In *Dranoff–Perlstein,* a personal injury law firm, with the alpha-numeric telephone number "INJURY–1," filed a trademark infringement suit against a personal injury lawyer after he obtained the telephone number "IN-JURY–9." The court of appeals declared that a mnemonic telephone number that correlates to a generic term may not form a valid and legally enforceable service mark. *See Dranoff–Perlstein,* 967 F.2d at 856–57. This, as acknowledged by the court, was contrary to the position espoused by the Second Circuit in *Dial–A–Mattress Franchise Corp. v. Page,* 880 F.2d 675 (2d Cir. 1989). Although the Third Circuit ruled that the term "INJURY" was "so commonly descriptive" of the legal services provided by the parties that the term should be deemed generic, it remanded the matter to determine whether the composite term "INJURY–1" could be considered a descriptive mark that had obtained secondary meaning so as to warrant trademark protection. *See Dranoff–Perlstein,* 967 F.2d at 860–63.

■ Plaintiff argues that *Dranoff–Perlstein* is distinguishable and inapposite because it does not use "800 SPIRITS" as a telephone number but instead uses the mark only as the name of its business and holds it out as an indication of the source of its gift delivery services. It is true that 800 Spirits does not seek to protect the service mark of its telephone number as did the plaintiff firm in *Dranoff–Perlstein.* However, the interest in promoting fair competition that underlies that decision compels judgment in favor of the defendant here. "Generic terms are denied trademark protection because granting one firm their exclusive use would place competitors at a serious competitive disadvantage." *Id.* at 857 (quoting 1 Jerome Gilson, *Trademark Protection and Practice* § 2.02,

at 2–23). Similarly, if a business were permitted to preclude the use of a toll-free telephone number that corresponds to a generic term simply by developing a service mark of "800," "888," or "877" followed by the term, competitors would be denied the opportunity to take advantage of this often effective marketing technique.

It has become increasingly popular to advertise one's services through toll-free mnemonic telephone numbers. *See generally* "TollFree's Unsolved Mysteries," *Telemedia News & Views,* Sept. 1, 1997, *available in* LEXIS, IAC Newsletter database (discussing the heightened competition for toll-free numbers and future methods to assign them). The competitive advantages derived from such "vanity" numbers are apparent. Because they are easily recognizable and memorable, they readily communicate the nature of the services offered. Companies that generate a significant portion of their business through telephone orders frequently advertise these numbers as their primary identification mark. There are often few available toll-free numbers that correlate to the specific generic term most descriptive of a firm's services. Competition for these limited toll-free numbers is extremely intense; companies often pay large sums for the right to use them. *See id.* To permit a company to foreclose usage of a toll-free mnemonic number that spells a generic term would give that company an unfair competitive advantage in the market and deprive consumers of the intrinsic utilitarian value that such numbers offer. This is especially true in the gift delivery services sector where companies rely on telephonic orders for a substantial part of their business. Such a result would also be contrary to the primary purpose of trademark law which is to deter such unfair competition. *See* 15 U.S.C. § 1127.

Further, a denial of summary judgment under these circumstances would be at odds with the holding of *Dranoff–Perlstein.* If plaintiff had been successful in its effort to obtain 1–800–SPIRITS as its telephone number and had identified its services with that mark, the Third Circuit's decision would certainly have prevented plaintiff from asserting

4. The available toll-free area codes are "800," "888," and the recently introduced "877."

any enforceable rights in this number because it correlates with an unmistakably generic term. As a personal injury law firm cannot obtain trademark protection for a telephone number that corresponds to the term "INJURY," so too is a company that specializes in the delivery of alcoholic gifts unable to protect a number that spells "SPIRITS." *Dranoff–Perlstein* rested on the reluctance to allow one company to foreclose the use of toll-free numbers that correspond to generic terms. That rationale supports judgment for defendant here.

The strong public interest in the promotion of unfettered competition outweighs any interest in avoiding the minimal potential for confusion that may result from Liquor By Wire's use of the 1–800–SPIRITED number. The Court notes that the defendant has taken precautions to dispel any confusion: Defendant identifies its trade name, Liquor By Wire, to all callers and prominently displays its trade name on the cover of catalogs and other advertising material. Plaintiff has failed to present any evidence of actual confusion. Moreover, plaintiff assumed the risk of any potential confusion by (1) deliberately selecting a service mark that consisted of a toll-free area code and a generic term and then (2) not reserving for itself the number 1–800–SPIRITS and all derivatives thereof.

This outcome is based on the generic nature of the non-numeric portion of plaintiff's service mark. This case is distinguishable from *Kelley Blue Book v. Car–Smarts, Inc.*, 802 F.Supp. 278 (C.D.Cal.1992), where plaintiff alleged that defendants' use of the numbers "1–900–BLU–BOOK" and "1–800–BLUE–BOOK" infringed its trademark "Kelley Blue Book." There the district court enjoined defendants from employing the phrase "blue book" or any confusingly similar phrase as part of an "800" or "900" telephone number used with its automobile pricing information service. The district court found the term "blue book" to be descriptive rather than generic in the context of vehicle valuation guides, and concluded that the phrase had acquired secondary meaning in the minds of consumers because it denoted Kelly

Blue Book as the source of the product. *Id.* at 285–86. By contrast, the term "spirits" is not protectible as a mark in the alcoholic beverage delivery industry because of its unquestioned generic character. It may thus be freely used as part of a telephone designation. *Cf. Multi–Local Media Corp. v. 800 Yellow Book Inc.*, 813 F.Supp. 199 (E.D.N.Y. 1993) (plaintiff's service mark "Yellow Book," used in connection with its publication of classified telephone directories, had acquired sufficient secondary meaning to entitle plaintiff to preliminarily enjoin defendant Yellow Book Inc. from using the telephone number 1–800–Yellow–Book for its electronic directory referral service).

■ The Court limits its holding to the legality of the use of telephone numbers that correspond to a derivative of 800 Spirits' service mark. Simply put, within the circumstance of telephone: number designations, the number 800 is a functional term that represents a toll-free area code. A service mark that uses "800" with a generic term cannot as a matter of law preclude use of substantially similar telephone numbers.[5]

### Conclusion

For the foregoing reasons, the Court grants summary judgment to defendant and dismisses all counts against it.

**SO ORDERED.**

### ORDER

This matter arises on the motion of defendant Liquor By Wire, Inc. for summary judgment dismissing the Complaint of plaintiff 800 Spirits Inc. Upon consideration of the submissions of the parties and for the reasons stated in the accompanying opinion, the Court rules as follows:

The Court **grants** defendant's motion for summary judgment and dismisses **with prejudice** all counts against Liquor By Wire, Inc.

**SO ORDERED.**

---

5. For similar reasons, the Court dismisses plaintiff's dilution claim. The Court holds that use of a telephone number that corresponds with a generic term cannot unlawfully dilute plaintiff's mark.