Paper No. 12
CMB

THIS DISPOSITION IS CITABLE
AS PRECEDENT OF THE TTAB                    NOVEMBER 2, 1999
U.S. DEPARTMENT OF COMMERCE
PATENT AND TRADEMARK OFFICE
_____

Trademark Trial and Appeal Board
_____

In re Dial A Mattress Operating Corporation
_____

Serial No. 75/131,355
_____

Arthur L. Plevy of  Plevy & Associates for Dial A Mattress Operating Corporation.

Thomas W. Wellington, Trademark Examining Attorney, Law Office 104 (Sidney Moskowitz, Managing Attorney).
_____

Before Simms, Hairston and Bottorff, Administrative Trademark Judges.

Opinion by Bottorff, Administrative Trademark Judge:

Applicant has filed an intent-to-use application to register the designation 1-888-M-A-T-R-E-S-S on the Principal Register for "telephone shop-at-home retail services in the field of mattresses."[1]  Applicant claims

---

[1] Application Serial No. 75/131,355, filed July 9, 1996. Applicant has claimed ownership of seven Principal Register registrations, i.e.:

Registration No. 1,339,658, of the mark DIAL A MATTRESS for "retail outlet services and retail direct sale of mattresses."

that the designation is inherently distinctive and, in the

alternative, that it has acquired distinctiveness and thus

---

Applicant has disclaimed MATTRESS apart from the mark as shown.  Issued June 4, 1985; combined Section 8 and 15 affidavit accepted and acknowledged.

Registration No. 1,554,222, of the mark DM DIAL A MATTRES (and design) for "retail outlet services and retail direct sale of mattresses."  Issued August 29, 1989; combined Section 8 and 15 affidavit accepted and acknowledged.

Registration No. 1,728,356, of the mark 1-800-MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS for "retail outlet services and retail direct sale of mattresses." Applicant has disclaimed "1-800" apart from the mark as shown. Issued October 27, 1992; combined Section 8 and 15 affidavit filed October 27, 1998, Post-Registration action mailed March 29, 1999.

Registration No. 1,748,796, of the mark DIAL-A-MATTRESS (and design) for "franchising; namely, providing technical assistance in the establishment and/or operation of retail outlet stores for direct sale of mattresses."  Issued January 26, 1993.

Registration No. 1,589,453, of the mark (212) M-A-T-T-R-E-S for "retail outlet services and retail store services featuring mattresses."  Issued March 27, 1990; combined Section 8 and 15 affidavit accepted and acknowledged.  The "(212)" portion of the mark is depicted on the registration drawing in broken lines, and the following statement appears on the registration: "The drawing is lined to indicate that the area code will change."  (*Note*: throughout the remainder of this decision, the Board will follow applicant's practice of referring to this registration as the "(AREA CODE) M-A-T-T-R-E-S" registration.)

Registration No. 1,757,763, of the mark PHONE-A-MATTRESS for "retail outlet services and retail direct sale of mattresses." Issued March 9, 1993; combined Section 8 and 15 affidavit accepted and acknowledged.

Registration No. 1,828,682, of the mark DIAL-A-PEDIC for "telephone shop-at-home retail sales services in the field of orthopedic mattresses."  Issued March 29, 1994.

2

is registrable on the Principal Register pursuant to Trademark Act Section 2(f), 15 U.S.C. §1052(f).

The Trademark Examining Attorney has refused registration under Trademark Act Section 2(e)(1), 15 U.S.C. §1052(e)(1), on the grounds that the designation applicant seeks to register is merely descriptive as applied to applicant's services, that it is generic as applied to applicant's services, and, if the designation is found not to be generic, that applicant's evidence of acquired distinctiveness is insufficient to warrant registration on the Principal Register pursuant to Section 2(f).

When the refusals were made final, applicant filed this appeal. Applicant and the Trademark Examining Attorney have filed main briefs, and applicant has filed a reply brief. Applicant has not requested an oral hearing.

The evidence of record, which we have considered both in connection with applicant's Section 2(f) claim and as part of our determination of whether applicant's mark is merely descriptive and/or generic, *see In re Paint Products Co.,* 8 USPQ2d 1863, 1866 (TTAB 1988), consists of the "Declaration of Acquired Distinctiveness" executed pursuant to 37 C.F.R. §2.20 by Robert A. Isler, applicant's Assistant General Counsel. Mr. Isler states that applicant is a well-known company that has been in the business of

3

selling mattresses over the telephone under the DIAL-A-MATTRESS mark for more than twenty years, and that applicant owns the registrations claimed in the application [see *supra* at footnote 1]. He also avers that applicant has advertised its registered service marks, including the "(AREA CODE) MATTRESS" [sic][2] mark, in national publications, on nationwide television and on billboards located along major highways; that applicant operates franchises for selling its products in major cities located throughout the East Coast and beyond, including Boston, Chicago, New York, Philadelphia and Washington, D.C.; that applicant's franchisees use, under license, applicant's registered marks, including the "(AREA CODE) MATTRESS" [sic][3] mark; that applicant has spent "literally millions of dollars" to date "promoting and protecting the (AREA CODE) MATTRESS [sic][4] mark"; and that applicant's franchisees also have promoted the mark. Mr. Isler also states that applicant filed applications in July 1996 to register the marks "1-888-MATRESS" [sic],[5] "1-800-MATRESS" [sic],[6] and

---

[2] The registered mark is (AREA CODE) M-A-T-T-R-E-S, not (AREA CODE) MATTRESS.

[3] See *supra* at footnote 2.

[4] See *supra* at footnote 2.

[5] The application involved in this appeal. The mark depicted in the application is 1-888-M-A-T-R-E-S-S, not 1-888-MATRESS.

"1-888-MATTRES" [sic],[7] and that these applications were filed because, while it already owns the "(AREA CODE) MATTRESS" [sic][8] registration, applicant "receives an inordinate number of telephone calls from customers over the phone lines 1-800-MATRESS, 1-888-MATRESS and 1-888-MATTRES.  Apparently, many customers are unfamiliar with the correct spelling of the word 'MATTRESS,' or they misdial the number."  (Isler Declaration at paragraph 5.) Finally, he avers that in the sixteen months since the filing of those three applications in July 1996, applicant

> has received one million telephone calls on the 1-800 MATRESS line, the 1-888-MATRESS line and the 1-888-MATTRES line.  Upon information and belief, virtually all the customers who use these lines understand that the numbers they have dialed, 1-800 MATRESS, 1-888-MATRESS, and 1-888-MATTRES, are owned by and/or identified with a particular source, namely, the applicant herein, Dial A Mattress.  In dialing these numbers, the callers intend to reach DIAL A MATTRESS.

(Isler Declaration at paragraph 6.)  Attached to Mr. Isler's Declaration of Acquired Distinctiveness are samples

---

[6] Serial No. 75/130,172, abandoned on March 30, 1998 for failure to respond to an office action.  The mark depicted in the application was 1-800-M-A-T-R-E-S-S, not 1-800-MATRESS.

[7] Serial No. 75/131,352, abandoned on March 30, 1998 for failure to respond to an office action.  The mark depicted in the application was 1-888-M-A-T-T-R-E-S, not 1-888-MATTRES.

[8] See *supra* at footnote 2.

of applicant's advertisements, each of which depict use of the designations DIAL-A-MATTRESS and 1-800-MATTRESS in conjunction with the wording "Leave The Last 'S' Off For Savings."

**Genericness.**

The Court of Appeals for the Federal Circuit has stated that:

> [d]etermining whether a mark is generic . . . involves a two-step inquiry:  First, what is the genus of goods or services at issue?  Second, is the term sought to be registered . . . understood by the relevant public primarily to refer to that genus of goods or services?

*H. Marvin Ginn Corp. v. International Ass'n of Fire Chiefs, Inc.*, 782 F.2d 987, 990, 228 USPQ 528, 530 (Fed. Cir. 1986).  This two-part test is the basis of our analysis in genericness cases.

Applicant seeks to register an alphanumeric telephone number as a service mark.  Neither the Court of Appeals for the Federal Circuit nor the Board has specifically addressed the question of genericness in the context of such marks.  We note, however, that several other courts have done so.

For example, the decision of the District Court in the case of *800 Spirits Inc. v. Liquor By Wire, Inc.*, 14 F.Supp.2d 675 (D.N.J. 1998) is persuasive and instructive. In that case, the Court held that the plaintiff, which used the designation "800 SPIRITS" in connection with gift delivery services in the field of alcoholic beverages, could not as a matter of law preclude the defendant (its competitor) from using the toll-free telephone number 1-800-SPIRITED in connection with similar services, and accordingly refused to enjoin the defendant's use of that telephone number.

Adopting the reasoning of the Third Circuit Court of Appeals in *Dranoff-Perlstein Associates v. Sklar*, 967 F.2d 852, 23 USPQ2d 1174 (3d Cir. 1992) and rejecting (as did the Third Circuit in *Dranoff*) the contrary reasoning of the Second Circuit Court of Appeals in *Dial-A-Mattress Franchise Corp. v. Page,* 880 F.2d 675, 11 USPQ2d 1644 (2d Cir. 1989), the District Court in *800 Spirits* noted that it has become increasingly popular to advertise one's services through toll-free mnemonic telephone numbers which spell out words or phrases which are descriptive of or generic for the services. The Court found that SPIRITS, the non-numeric portion of the plaintiff's designation 800 SPIRITS, was generic for the alcoholic beverage delivery services

provided by the plaintiff, and that, as used in telephone number designations, the numbers "800," "888," and "877" are functional terms that represent toll-free area codes. The Court concluded that, just as generic terms are denied trademark protection because granting one firm their exclusive use would place competitors at a serious competitive disadvantage, "[s]imilarly, if a business were permitted to preclude the use of a toll-free telephone number that corresponds to a generic term simply by developing a service mark of '800,' '888,' or '877' followed by the term, competitors would be denied the opportunity to take advantage of this often effective marketing technique." *800 Spirits, supra*, 14 F.Supp.2d at 680.

We are persuaded that the analysis and rationale set forth in *Dranoff-Perlstein* and *800 Spirits*, *supra*, would serve as an appropriate complement to the Federal Circuit's *Ginn* two-part test in cases requiring a determination of the genericness of alphanumeric telephone number marks. Accordingly, we hold that if the mark sought to be registered is comprised solely of the combination of a designation (such as a toll-free telephone area code) which is devoid of source-indicating significance, joined with matter which, under the *Ginn* two-part test, is generic for

8

the identified goods or services, then the mark as a whole is generic and unregistrable. Stated differently, a generic term is not transformed into a registrable mark simply by joining it with a toll-free telephone area code which itself is devoid of source-indicating significance.

We note that this test is essentially the same test already used by the Trademark Examining Operation for determining the registrability of alphanumeric telephone number marks. The Trademark Manual of Examining Procedure, following the Third Circuit's *Dranoff* decision rather than the Second Circuit's *Dial-A-Mattress* decision, sets forth the following general guidelines with respect to the registrability of such telephone number marks:

> If an applicant applies to register a designation that consists of a merely descriptive or generic term with numerals in the form of a telephone number, for example, 800, 888 or 900 followed by a word, registration should be refused under §2(e)(1). The fact that a designation is in the form of a telephone number is insufficient, by itself, to render it distinctive. *See Dranoff-Perlstein Associates v. Sklar*, 23 USPQ2d 1174 (3d Cir. 1992). *But see Dial-A-Mattress Franchise Corp. v. Page*, 880 F.2d 675, 11 USPQ2d 1644 (2d Cir. 1989); *Murrin v. Midco Communications Inc.,* 726 F.Supp. 1195, 13 USPQ2d 1815 (D. Minn. 1989). If the relevant term is merely descriptive, but not generic, the mark may be registered on the Principal Register with a proper showing of acquired distinctiveness under §2(f) or on the

> Supplemental Register.  Of course, the
> designation must also be used in the manner
> of a mark.[9]  If the relevant term is generic,
> the designation is unregistrable on either
> the Principal or the Supplemental Register.

TMEP section 1209.01(b)(12).  Furthermore, it appears that a similar analysis has been adopted by the Office for examination of the ever-increasing number of marks which consist of or incorporate those portions of Internet domain names which are devoid of any source-indicating significance, such as "http," "www" and ".com".  *See* Examination Guide No. 2-99, issued September 29, 1999, entitled "Marks Composed, in Whole or in Part, of Domain Names."[10]

Applying this analysis to the present case, we find that applicant's mark 1-888-M-A-T-R-E-S-S is generic and unregistrable, inasmuch as it consists merely of a generic

---

[9] Applicant's application is based on intent-to-use, and applicant has not yet filed its allegation of use and provided the Office with specimens showing the manner of its use of the matter sought to be registered.  Therefore, the issue of whether the matter sought to be registered is being used as, and functions as, a mark (rather than as merely a telephone number, e.g.), is not before us in this case.

[10] Additionally, we note that the Board has used a similar analysis in the analogous situation of marks which are comprised solely of generic matter combined or joined with an entity designation such as "Inc." or "Co."  In such cases, the entity designation is found to be devoid of source-indicating significance, and its presence in the mark does not suffice to transform otherwise generic matter into a registrable mark.  *See, e.g., In re The Paint Products Co., supra; In re E.I. Kane, Inc.,* 221 USPQ 1203 (TTAB 1984).

term combined with a telephone area code. *See Dranoff-Perlstein, supra,* and *800 Spirits, supra.*

Specifically, we find that "M-A-T-R-E-S-S" is the legal equivalent of the word "mattress." *See In re Hubbard Milling Co., 6 USPQ2d 1239 (TTAB 1987); see also In re Wyandotte Chemicals Corporation*, 155 USPQ 100 (TTAB 1967), and *In re Initial Teaching Alphabet Publications, Inc*., 153 USPQ 684 (TTAB 1967). Applicant does not contend otherwise. We further find that the genus of the services involved in this case is that of "telephone shop-at-home retail mattress sales," and that M-A-T-R-E-S-S, the legal equivalent of the word "mattress," would be understood by the relevant purchasing public to refer primarily to that genus of services. Accordingly, we find that M-A-T-R-E-S-S is generic for such services under the *Ginn* two-part test. *See In re Bonni Keller Collections Ltd.*, 6 USPQ2d 1224 (TTAB 1987)(LA LINGERIE generic for "retail store services in the field of clothing"); *In re Wickerware, Inc.,* 227 USPQ 970 (TTAB 1985)(WICKERWARE generic for "mail order and distributorship services in the field of products made of wicker"); *In re Half Price Books, Records, Magazines, Incorporated*, 225 USPQ 219 (TTAB 1984)(HALF PRICE BOOKS RECORDS MAGAZINES generic for "retail book and record store services").

Furthermore, we take judicial notice, s*ee* Fed. R. Evid. 201(b) and Trademark Rule 2.122(a), that toll-free telephone area codes such as "1-888" are used by numerous persons and businesses, and accordingly we find that such telephone area codes are devoid of any source-indicating significance.[11]  The presence of this non-distinctive telephone area code in applicant's mark does not negate the genericness of the term M-A-T-R-E-S-S, nor does it transform that generic term into a registrable mark.  *See Dranoff-Perlstein, supra,* and *800 Spirits, supra.*

Because applicant's mark consists merely of a generic term combined with a non-distinctive toll-free telephone

---

[11] *See, e.g.*, Newton's Telecom Dictionary (15th Ed. 1999) at 16-17:

> **800 Service** Eight-hundred service.  A generic and common (and not trademarked) term for AT&T's, MCI's, Sprint's and the Bell operating companies' IN-WATS service.  All these IN-WATS services have 800 and 888 as their "area code," with 877 numbers scheduled for 1998 release.  Dialing an 800-number is free to the person making the call.  The call is billed to the person or company being called . . . 800 Service works like this: You're somewhere in North America. You dial 1-800 or 1-888 and seven digits. . . .
>
>  . . .
>
> **888 Service** When North America ran out of 800 numbers, it adopted a new prefix - 888.  The first 888 number came in around April 1996.  877 numbers will begin in April of 1998.  The 877 and 888 prefixes have all the characteristics of today's 800 Service.

area code, we find the mark as a whole to be generic and
unregistrable.[12]

---

[12]    We are cognizant of the recent decision of the Court of
Appeals for the Federal Circuit in the case of *In re American
Fertility Society*, ___ F.3d ___, 51 USPQ2d 1832 (Fed. Cir. 1999).
In that case, the Board, relying on *In re Gould Paper Corp.*, 835
F.2d 1017, 5 USPQ2d 1110 (Fed. Cir. 1987) and citing evidence
establishing that the individual terms SOCIETY and REPRODUCTIVE
MEDICINE were each generic, had found the phrase SOCIETY FOR
REPRODUCTIVE MEDICINE to be generic for "association services,
namely promoting the interests of the reproductive medicine
industry."  On appeal, the Court held that the Board had applied
the wrong legal test, which it had derived from *Gould*, to the
facts of the case.  The Court explained that the *Gould* test,
which allows the Office to satisfy its genericness evidentiary
burden by producing "evidence including dictionary definitions
that the separate words joined to form a compound have a meaning
[to the relevant public] identical to the meaning common usage
would ascribe to those words as a compound," *Gould, supra*, 5
USPQ2d at 1111-12, is applicable only to marks comprised of
compound words such as the mark involved in *Gould*, i.e.,
SCREENWIPE [also SCREEN WIPE – the *Gould* Court specifically
stated, *see* 5 USPQ2d at 1112, that the presence or absence of a
space between the words was not determinative of its status as a
"compound word"].  The Court stated: "*Gould* is limited, on its
facts, language, and holding, to compound terms formed by the
union of words.  It is legally erroneous to attempt to apply the
[*Gould* test] to phrases consisting of multiple terms, which are
not 'joined' in any sense other than appearing as a phrase."  *In
re American Fertility*, 51 USPQ2d at 1837.  The Court remanded the
case to the Board for application of:

> [t]he correct legal test for genericness of phrases,
> as set forth in *Marvin Ginn*, [which] requires evidence
> of 'the genus of goods or services at issue' and the
> understanding by the general public that the mark
> refers primarily to 'that genus of goods or
> services.'"  . . . The Board must now apply the *Marvin
> Ginn* test to the phrase as a whole, and not focus only
> on the individual terms."

*Id*.
        However, *In re American Fertility Society* did not involve
an alphanumeric telephone number mark, and the holding and
analysis of that case do not seem to be readily applicable in the
context of determining the genericness of such marks.  That is,
to the extent that the decision holds that a finding of
genericness requires a showing that the designation in question,

in its entirety, has actually been used in a generic manner by the applicant or by others, it would appear that an alphanumeric telephone number mark could never be proven to be generic. Such a mark is comprised of a telephone number which has been assigned or allocated solely to one person or business, and which thus will have been used only by that one person or business. In view thereof, there would have been no opportunity in the marketplace for others to have used the asserted mark at issue, and it is highly unlikely that the Office, or a plaintiff in an inter partes proceeding before the Board, would ever be able to produce the requisite evidence of such use of the asserted mark by others. *Cf. Gillette Canada Inc. v. Ranir Corp.,* 23 USPQ2d 1768, 1774 (TTAB 1992)(absence of evidence of actual confusion is of little probative weight in likelihood of confusion analysis where it does not appear that there has been any meaningful opportunity for actual confusion to have occurred).

The result under such an analysis would amount essentially to a *per se* rule that telephone number marks consisting solely of generic matter combined with a toll-free telephone area code (and, by logical extension, "domain name" marks consisting solely of generic terms combined with ".com" or other non-distinctive matter) can never be refused registration on the ground of genericness. For the reasons discussed by the respective courts in *Dranoff-Perlstein, supra*, and *800 Spirits*, *supra,* we do not believe that such a rule would be appropriate, and we instead have adopted the analysis set forth in those cases, as a supplement to the *Ginn* two-step genericness test in this case.

Moreover, to the extent that, contrary to our assumption, *In re American Fertility Society* is deemed to be applicable to the determination of whether alphanumeric telephone number marks are generic, we believe that our genericness finding in this case is consistent with the Court's teaching and decision. As noted above, in its discussion of the proper tests to be used in determining genericness, the Court distinguishes between "phrase" marks and "compound word" marks. In cases involving compound marks, "*Gould* provides additional assistance" to the Office in the Office's efforts to satisfy the *Ginn* two-part genericness test, by relieving the Office of the burden of producing evidence of generic use of the compound term, per se. Instead, such marks may be proved to be generic if the evidence of record establishes that each of the constituent words which makes up the compound is itself generic under the *Ginn* two-part test, and that the compound created by joining those constituent generic words has no different or additional meaning than the constituent words themselves have. *In re American Fertility Society, supra* at 1836-37.

As between a "phrase" mark and a "compound" mark, an alphanumeric telephone number mark such as applicant's clearly is more akin to a "compound" mark, inasmuch as it is comprised of two constituent elements (a generic word and a telephone area

14

Applicant's arguments in opposition to the genericness refusal are unpersuasive. Essentially, applicant argues that the Third Circuit's *Dranoff* decision is the "minority rule" with respect to telephone number marks, and that the Office instead should follow the Second Circuit's *Dial-A-Mattress* decision and allow telephone numbers incorporating generic terms to be registered as marks. We disagree, for the reasons set forth by the Third Circuit in *Dranoff* and by the District Court in *800 Spirits*, discussed above.[13] Instead, we find that the

---

code) which are joined to form a single compound term. Therefore, in attempting to establish that an alphanumeric telephone number mark is generic under the two-part test of *Ginn*, *supra*, the Office should be entitled to the "additional assistance" provided by *Gould* in cases involving compound marks, and should not be required to present evidence that the compound term, per se, has been used generically by applicant or others.

In the present case, the record shows that each of the components of applicant's compound mark, i.e., the toll-free telephone area code "1-888" and the term "mattress" or its equivalent "M-A-T-R-E-S-S," is generic and non-distinctive in itself. The meaning purchasers would attribute to the compound formed by the joinder of these generic and non-distinctive components is identical to the meaning of the components themselves. Thus, to the extent that *In re American Fertility Society, supra,* is applicable to alphanumeric telephone number marks such as applicant's, we find that applicant's mark is generic under the analysis set forth in that case.

[13] Applicant also has attached to its appeal brief a copy of a page from the March 11, 1997 issue of the Official Gazette, offered to show that the Office has approved for publication two marks consisting of alphanumeric telephone numbers (i.e., the marks 1-800 YOUR HMO and 1-888 YOUR HMO, both of which are for "health care services," and in both of which the term "HMO" has been disclaimed). Applicant argues that such approvals are contrary to the Office's stated policy regarding the registrability of such marks as set forth in TMEP section 1209.01(b)(12), see *supra*, and that applicant's application

15

Trademark Examining Attorney's refusal on the ground of genericness was proper, and accordingly we affirm that refusal.

**Mere descriptiveness**.

As discussed above, we have found applicant's mark to be generic for the recited services. However, assuming *arguendo* that applicant's mark is not generic, we also find that it is merely descriptive, indeed that it is highly descriptive, of the recited services. Accordingly, we also affirm the Trademark Examining Attorney's mere descriptiveness refusal.

In a recently-published decision, the Board found the mark 888 PATENTS to be merely descriptive of services recited as "legal services, namely, patent research, prosecution and enforcement; patent searching." *In re Page*, 51 USPQ2d 1660 (TTAB 1999). The Board held that the mark was merely descriptive because it consisted solely of the merely descriptive term PATENTS preceded by the numerals 888, which were found to be devoid of source-

accordingly should be approved for publication as well. This evidence is untimely, see Trademark Rule 2.142(d). Moreover, even if we assume (and we do not) that publication of these marks is contrary to the Office's policy, that fact is not determinative in the present case. See TMEP section 1209.01(b)(1); *In re Scholastic Testing Service, Inc.*, 196 USPQ 517 (TTAB 1977).

indicating significance inasmuch as they would readily be perceived as nothing more than the prefix used in a toll-free telephone number. *Id*. at 1664-65.

Likewise in the present case, we find that the designation "M-A-T-R-E-S-S" is the legal equivalent of the word "mattress"; that applicant's recited services involve the retail sale of mattresses by telephone; that the word "mattress" or its legal equivalent M-A-T-R-E-S-S merely describes this aspect or feature of applicant's services; that the toll-free telephone area code "1-888" is devoid of any source-indicating significance; and that applicant's joining of the non-distinctive toll-free telephone area code "1-888" and the merely descriptive term "mattress" or M-A-T-R-E-S-S does not transform these non-distinctive components into an inherently distinctive compound mark.

We are not persuaded by applicant's arguments, set forth in its briefs, in opposition to the Trademark Examining Attorney's mere descriptiveness refusal. Contrary to applicant's contention, it is not determinative that purchasers might not be able to immediately discern from applicant's mark all of the specific features of the services applicant offers in connection with its sale of mattresses, i.e., that applicant offers same-day service, two-hour delivery, and warranties on its mattresses. *See*

17

*In re Patent & Trademark Services Inc.,* 49 USPQ2d 1537 (TTAB 1998)*; In re H.U.D.D.L.E.,* 216 USPQ 358 (TTAB 1982); *In re MBAssociates*, 180 USPQ 338 (TTAB 1973). Likewise, the purported availability of other terms which applicant's competitors might use in connection with their sale of mattresses does not negate the mere descriptiveness of the matter applicant seeks to register. *See In re The Officers' Organization For Economic Benefits, Limited*, 221 USPQ 184 (TTAB 1984). Finally, the fact that applicant owns an incontestable registration on the Principal Register of the mark DIAL A MATTRESS does not mandate a finding in the present case that the 1-888-M-A-T-R-E-S-S mark is inherently distinctive. DIAL A MATTRESS and 1-888-M-A-T-R-E-S-S clearly are different marks.[14]

---

[14] Certain statements in applicant's brief and in its response to the Trademark Examining Attorney's first Office action might be construed as applicant's attempt to argue that its ownership of incontestable registrations of certain of its other marks precludes or estops the Office from refusing registration of applicant's present mark on the grounds of mere descriptiveness, under *In re American Sail Training Association*, 230 USPQ 879 (TTAB 1986). Applicant does not make this argument specifically, nor does applicant ever cite the *In re American Sail Training* decision. However, in the interest of completeness, we will address the argument here.

*In re American Sail Training* is inapposite to this case. As discussed *infra* with respect to applicant's Section 2(f) claim, the mark applicant now seeks to register is not the same mark as the marks previously registered by applicant. Furthermore, the services recited in the present application are not the same services as those recited in the previous registrations, but rather are additional and different services. Accordingly, to the extent that applicant is attempting to make a "Tall Ships"-type argument in this case, we reject that argument. *See In re*

**Section 2(f).**

Because we have found applicant's 1-888-M-A-T-R-E-S-S designation to be generic as applied to the services recited in the application, applicant's alternative request for registration pursuant to Section 2(f) is unavailing. That is, because the designation is generic and incapable of functioning as a service mark, no amount of evidence of acquired distinctiveness would be sufficient to warrant its registration as a mark. *See, e.g., H. Marvin Ginn Corp., supra*, 782 F.2d at 989, 228 USPQ at 530. In the interest of completeness, however, we will decide whether applicant's evidence of acquired distinctiveness would be sufficient, if applicant's designation were to be determined not to be generic, to warrant registration of the designation under Section 2(f).

Generally, the higher the degree of descriptiveness of the mark involved, the greater the amount and quality of evidence of acquired distinctiveness that is required to warrant registration under Section 2(f). *See Yamaha International v. Hoshino Gakki*, 840 F.2d 1572, 6 USPQ2d 1001, 1008 (Fed. Cir. 1988). Furthermore, because

---

*Loew's Theaters, Inc.,* 769 F.2d 764, 226 USPQ 865 (Fed. Cir. 1985); *In re Sunmarks Inc.*, 32 USPQ2d 1470 (TTAB 1994); *In re Industrie Pirelli Societa per Azioni,* 9 USPQ2d 1564 (TTAB 1988); *In re BankAmerica Corp.*, 231 USPQ 873 (TTAB 1996).

19

applicant's application is an intent-to-use application, applicant would be entitled to registration under Section 2(f) only if applicant establishes that, as a result of applicant's use of the mark on related goods or services, the mark has become distinctive as to those other goods or services and that this previously created distinctiveness will transfer to the services recited in the present application when the mark is used in connection with those services.  *See* TMEP section 1212.09(a).

In support of its Section 2(f) claim that the designation 1-888-M-A-T-R-E-S-S will have acquired distinctiveness as a service mark for "telephone shop-at-home retail services in the field of mattresses" once it is used in connection with those services, applicant relies on its ownership of the registered marks claimed in its application, see *supra* at footnote 1, especially its registrations of the marks DIAL-A-MATTRESS for "retail outlet services and retail direct sale of mattresses" (Reg. No. 1,339,658), 1-800-MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS for "retail outlet services and retail direct sale of mattresses" (Reg. No. 1,728,356), and the "phantom" mark (AREA CODE) M-A-T-T-R-E-S for "retail outlet services and retail store services featuring mattresses" (Reg. No. 1,589,453).  Applicant also relies on

the 37 C.F.R. §2.20 "Declaration of Acquired Distinctiveness" executed by Robert A. Isler, discussed and quoted from earlier in this opinion.

We turn first to applicant's prior registrations. Trademark Rule 2.41(b) provides, in relevant part, that "in appropriate cases, ownership of one or more prior registrations on the Principal Register or under the Act of 1905 of the same mark may be accepted as prima facie evidence of distinctiveness." However, the rule also provides that the Office may require further evidence of acquired distinctiveness. The Trademark Examining Attorney has discretion whether to accept prior registrations as prima facie evidence of acquired distinctiveness under the rule, especially where the mark and/or the goods and services of the existing registrations are not the same as the mark and/or the goods and services in the application. *See In re Best Products Co., Inc.*, 231 USPQ 988, 989 fn. 6 (TTAB 1986); TMEP section 1212.04.

The Trademark Examining Attorney has refused to accept applicant's prior registrations as prima facie evidence of acquired distinctiveness in this case, arguing that applicant's previously registered marks are not "the same mark" as the mark applicant seeks to register in the

21

present application.[15]  Applicant, in turn, argues that its

prior registrations are sufficient as prima facie evidence

of acquired distinctiveness.  Applicant contends that the

mark it now seeks to register, 1-888-M-A-T-R-E-S-S, is the

legal equivalent of its previously registered marks,

especially its (AREA CODE) MATTRES mark and its 1-800-

MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS

mark, and that any differences between its present mark and

these registered marks, i.e., the inclusion of the 1-888

area code and the different misspelling of the word

"mattress," are immaterial and inconsequential.  In its

reply brief, however, applicant acknowledges that "[t]he

public will not view the mark sought to be registered to be

the 'same' as the registered marks," but also argues that

"the public will recognize the source, and will thereby

recognize the marks as the 'same' as an indicia [sic] of

origin for Applicant's goods and services."  (Reply brief

at p. 3.)

The analysis used to determine whether applicant's

present mark is "the same mark" as its previously

_____

[15] The Trademark Examining Attorney's rejection of applicant's
prior registrations as prima facie evidence of acquired
distinctiveness is based solely on the asserted dissimilarities
between applicant's present mark and the registered marks, and
not on any argument that the services recited in the present
application are unrelated to the services recited in the prior
registrations.  *See In re Best Products Co., Inc., supra.*

registered marks, for purposes of Trademark Rule 2.41(b),
is similar to the analysis used in "tacking" cases to
determine whether a party may rely, for purposes of
establishing priority, on its prior use of a mark which is
not identical to its present mark, and also to the analysis
used to determine whether a proposed amendment to a mark
would constitute an impermissible material alteration.  See
TMEP section 1212.04.  In all of these situations, the
issue is whether the present mark and the previous mark are
"legal equivalents," i.e., whether they create the same,
continuing commercial impression such that the consumer
would consider both as the same mark.  *See Van Dyne-Crotty*
*Inc. v. Wear-Guard Corp.*, 926 F.2d 1156, 17 USPQ2d 1866
(Fed. Cir. 1991).  If the marks would be perceived as two
distinct marks, then they are not legal equivalents or "the
same mark," even if they are so similar that purchasers
would assume them to be owned and used by a single source.
*See Compania Insular Tabacalera v. Camacho Cigars, Inc.*,
167 USPQ 299, 303 (TTAB 1970).

For purposes of Trademark Rule 2.41(b), we find that
applicant's present mark, 1-888-M-A-T-R-E-S-S, is not "the
same mark" as applicant's previously registered marks.  In
its appeal brief and reply brief, applicant does not
seriously contend that its registered marks DIAL A

23

MATTRESS, DM DIAL A MATTRES (and design), DIAL-A-MATTRESS, PHONE-A-MATTRESS, and DIAL-A-PEDIC are the legal equivalents of its present mark 1-888-M-A-T-R-E-S-S, and we see no basis for finding any such legal equivalency. Instead, applicant has specifically relied on the mark 1-800-MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS, and the mark (AREA CODE) M-A-T-T-R-E-S.

We find that the registered mark 1-800-MATTRES, AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS is not the same mark as 1-888-M-A-T-R-E-S-S, and that it thus does not suffice as prima facie evidence of acquired distinctiveness under Trademark Rule 2.41(b).[16]  First, we note that the registration includes applicant's disclaimer of the exclusive right to use the toll-free telephone area code portion of the registered mark, "1-800."  To that extent, certainly, this registration is of limited probative value as evidence of acquired distinctiveness.

Furthermore, the registered mark also includes significant wording, i.e., AND LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS, which is not present in the mark 1-888-

---

[16] Also, as noted above, it currently appears from the Office's records that applicant's Section 8 affidavit with respect to Reg. No. 1,728,356 has not yet been accepted by the Office.  If the registration were to be cancelled under Section 8, it would not constitute evidence of acquired distinctiveness under Trademark Rule 2.41(b).  *See In re BankAmerica Corp.*, 229 USPQ 852, 853 (TTAB 1986); TMEP section 1212.04(d).

M-A-T-R-E-S-S.  The commercial impression created by applicant's registered mark emphasizes the telephone number's omission of the second "S" in the word MATTRESS. Indeed, this omission of the second "S" appears to be the dominant focus of applicant's advertising strategy, as demonstrated by the sample advertisements submitted as exhibits to Mr. Isler's Declaration.  Significantly, however, the second "S" is <u>not</u> omitted from the word MATTRESS in the telephone number depicted in the new mark 1-888-M-A-T-R-E-S-S, a fact reflected and reinforced by that mark's omission of the wording LEAVE OFF THE LAST S THAT'S THE S FOR SAVINGS.

Thus, even if purchasers might understand that both of these marks are owned and used by applicant, they nonetheless would perceive them as two separate marks, not "the same mark," as required by Trademark Rule 2.41(b).

Likewise, we find that applicant's registered mark (AREA CODE) M-A-T-T-R-E-S is not the legal equivalent of the mark 1-888-M-A-T-R-E-S-S.  Again, this registered mark omits the second "S" from the word MATTRESS.  This is in keeping with the fact that a consistent and dominant feature of applicant's advertising campaign is the invitation to purchasers to "Leave The Last 'S' Off For Savings."  Applicant's new mark 1-888-M-A-T-R-E-S-S,

significantly, does not omit the second "S" from the word MATTRESS, and for that reason it is readily distinguishable from the (AREA CODE) M-A-T-T-R-E-S mark. Even if purchasers might understand that the 1-888-M-A-T-R-E-S-S mark and the registered mark (AREA CODE) M-A-T-T-R-E-S are owned and used by a single source, i.e., applicant, we find that they nonetheless would perceive the marks as two distinct marks, rather than "the same mark."[17]

In short, we find that applicant's 1-888-M-A-T-R-E-S-S mark is not "the same mark" as any of the marks previously registered by applicant. Accordingly, we agree with the Trademark Examining Attorney that applicant's prior registrations are not sufficient, in themselves, to make out a prima facie showing of acquired distinctiveness which would entitle applicant to register its 1-888-M-A-T-R-E-S-S mark pursuant to Trademark Act Section 2(f).

We therefore must consider whether applicant's additional evidence in support of its claim of acquired distinctiveness, i.e., the Declaration of Robert Isler,

---

[17] Additionally, we note that the mark (AREA CODE) M-A-T-T-R-E-S is a "phantom" mark in which the "(AREA CODE)" designation in the mark is said to represent the use of any and all area codes. The probative value of this registration as evidence of the acquired distinctiveness of the particular mark at issue in this case certainly has not been enhanced by the Federal Circuit's recent holding that such "phantom" marks are not registrable. *See In re International Flavors & Fragrances Inc.*, ___ F.3d ___, 51 USPQ2d 1513 (Fed. Cir. 1999), *aff'g* 47 USPQ2d 1314 (TTAB 1998).

26

when combined with applicant's ownership of its prior registrations, is sufficient to establish acquired distinctiveness and to warrant registration under Section 2(f).  We find that it is not.

To the extent that applicant is relying on Mr. Isler's averments regarding applicant's use and advertising of its other marks as evidence of the acquired distinctiveness of the present mark, applicant's reliance is misplaced.  As discussed above, because the mark involved herein is not the same mark as those other marks, any acquired distinctiveness which may have been attained by those other marks is not transferable to the present mark.

Mr. Isler states in his declaration that applicant has made available to its customers the toll-free number which comprises the mark, i.e., 1-888-MATRESS, along with two other toll-free numbers, i.e., 1-800-MATRESS and 1-888-MATTRES; that applicant has received one million telephone calls on these three telephone lines in the sixteen months following July 1996; and that, "upon information and belief, virtually all the customers who use these lines understand that the numbers they have dialed . . . are owned by and/or identified with a particular source, namely, the applicant herein, Dial A Mattress.  In dialing

these numbers, the callers intend to reach DIAL A MATTRESS."

Mr. Isler's statements are of limited probative and persuasive value in determining whether 1-888-M-A-T-R-E-S-S has acquired distinctiveness as a service mark (or that it will have acquired distinctiveness upon its use in commerce).  Mr. Isler does not state how many of the above-referenced one million calls were received over the telephone number at issue in this case, as opposed to the other two telephone numbers.  Moreover, it appears that the telephone calls applicant received over the 1-888-MATRESS line were from persons who were intending to dial applicant's other, primary mnemonic telephone number, i.e., (AREA CODE) M-A-T-T-R-E-S, but who "are unfamiliar with the correct spelling of the word 'MATTRESS,' or they misdial the number."  Although this may be evidence that purchasers may misspell the word "mattress" and may misdial applicant's primary mnemonic telephone number, it is not persuasive evidence that purchasers perceive the designation 1-888-M-A-T-R-E-S-S, per se, as applicant's service mark.

More fundamentally, however, it is not determinative that customers may understand that the telephone number they have dialed, 1-888-MATRESS, is "owned by and/or

28

identified with a particular source, namely, the applicant herein, Dial A Mattress," and that by dialing that number, customers "intend to reach" applicant. The same would be true for any telephone number. When a person dials a telephone number, he or she is assuming that that telephone number is "identified with" a particular person or business, and is intending to reach that person or business. Contrary to applicant's apparent belief, those assumptions on the part of the caller are not evidence that the caller regards the telephone number being called as the service mark of the person or business being called.

In short, if we assume, contrary to our finding in this case, that 1-888-M-A-T-R-E-S-S is not generic as applied to applicant's services, it nonetheless clearly is highly descriptive of the services. Accordingly, a higher quantum and quality of evidence is required in order to find that the mark has acquired distinctiveness. *See Yamaha International v. Hoshino Gakki*, *supra*. We have considered all of applicant's evidence of acquired distinctiveness, and find that it is insufficient to establish that registration under Section 2(f) is warranted.

In summary, after careful consideration of the relevant authorities and the evidence and arguments submitted by applicant, we find that the matter applicant

seeks to register, i.e., 1-888-M-A-T-R-E-S-S, is merely descriptive of, and generic for, the services recited in the application.  Moreover, assuming that the matter is not generic, we find that applicant has failed to submit sufficient evidence of acquired distinctiveness to warrant registration pursuant to Trademark Act Section 2(f).

Decision:  The refusals to register are affirmed.

R. L. Simms

P. T. Hairston

C. M. Bottorff

Administrative Trademark Judges
Trademark Trial and Appeal Board

30